## Mellon et al. *versus* Lemmon et al.

1. A deed, otherwise absolute on its face, containing a clause, " Subject, nevertheless, to the right of redemption of the property by the grantor," is a mortgage.

2. The right of redemption in the mortgagor may be enforced in an action of ejectment. In such cases it is the duty of the jury, under the direction of the judge, sitting as a chancellor, to ascertain how much the mortgagee in possession has realized from the rents, issues, and profits. If they find he has received enough to pay the sum secured, a general verdict for the plaintiff should be rendered; if not, a conditional or special verdict should be found in such form that, upon payment of the residue, the mortgagor may, without unnecessary delay, obtain possession of the premises.

October 26th, 1885. Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. PAXSON, J., absent.

ERROR to the Court of Common Pleas, No. 2, of *Allegheny county:* Of October and November Term, 1885, No. 18.

Ejectment by Margaret Mellon, wife of J. M. H. Mellon, formerly Margaret Lemmon, in right of and for use of wife; Harriett Frazier, wife of L. O. Frazier, formerly Harriett Lemmon, in right of and for the use of said wife; and Nancy Lemmon, all children and heirs at law of William Lemmon, deceased; James Wilson, husband of Jane Wilson, deceased, formerly Jane Lemmon; John Henderson and Rebecca J. Henderson, his wife, formerly Rebecca J. Wilson, in right of and for the use of said wife; Clarissa Voight, formerly Clarissa A. Wilson, Margaret J. Boreland, wife of Matthew Boreland, formerly Margaret J. Boreland, in right of and for the use of said wife; and James S. Wilson, heirs at law of Jane Wilson, deceased, formerly Jane Lemmon, plaintiffs; against Mary Lemmon, widow of Thomas Lemmon, deceased; Lydia A. Quinette, wife of Alfred Quinette, formerly Lydia A. Lemmon; Mary E. McCutcheon, wife of Robert S. McCutcheon, formerly Mary E. Lemmon; and Henrietta Sweeny, wife of ———— Sweeny, formerly Henrietta Lemmon; children and heirs at law of Thomas Lemmon, deceased; and John Dick, defendants.

Plea, not guilty.

This was an ejectment between the collateral heirs of Robert Lemmon, deceased, brought 15th March, 1883, to determine the title to a tract of land which formerly belonged to said Robert Lemmon, who died in June 2, 1871.

[Mellon *v.* Lemmon.]

On the trial of this case, before EWING, A. L. J., the following facts appeared:

Robert Lemmon was a bachelor, who accumulated some property, and in the early part of his life was generally employed as a farmer for different persons in Indiana township, in Allegheny County. On the 17th of November, 1841, he purchased the land in dispute from William Henderson. The deed is duly recorded. Shortly after the purchase, Thomas Lemmon, the brother of Robert, moved on to the farm with his wife and family, and remained there until his death, which occurred in 1876, and during his lifetime, Robert Lemmon, when out of a situation, made his home with his brother Thomas, up to his death in June, 1871, for the last few years of his life, when he became old and diseased, he resided permanently with his brother.

On the 18th day of September, 1869, Thomas Lemmon presented his petition to the Court of Common Pleas of Allegheny County, Pa., setting forth that his brother, Robert Lemmon, was a lunatic, and was seised of a farm, &c., in East Deer township, in said county, and was incapable of managing his estate. An inquisition was awarded, and on October 18th, 1869, the inquest was returned, finding that Robert Lemmon was a lunatic, and had been a lunatic for five years last past. That he was 63 years of age, and was possessed of a tract of land, &c., worth $3,500, and of the yearly value of $100, clear of taxes, and that his next of kin were Thomas Lemmon, aged 60 years; David Lemmon, aged 65 years; Hugh Lemmon, aged 70 years; Nancy Speer, aged 72 years; Jane Wilson, aged 64 years; Rebecca Halstead, aged 50 years.

On November 6th, 1869, the inquisition was confirmed, and Thomas Lemmon was appointed committee of the person and estate of said Robert Lemmon, and directed to give bond, &c. Same day bond of committee approved and filed. No account was filed by the committee in his lifetime, but on the 9th day of July, 1883, Joseph Henderson, administrator of Thomas Lemmon, deceased, filed the account of Thomas Lemmon, committee, claiming a balance due the committee of $1,740.58⅔. In this account there was a credit given of $158.33⅓ for the rent of this farm from the 6th day of November, 1869, until the death of Robert Lemmon, to wit, June 2d, 1871.

On the trial the title in Robert Lemmon, the lunatic, was admitted, and also that he never owned but this one tract of land in this county, and also that the heirs at law were as stated in the abstracts, and the defendants then set up title to the land under a conveyance by Robert Lemmon to their father, Thomas Lemmon, made on the 26th day of September, 1861, and recorded (after Robert Lemmon's death), to wit,

on the 7th day of June, A. D., 1871, in Deed Book, vol. 274, page 260.

This paper is in the words and figures, to wit:

ROBERT LEMMON ⎱
          to          ⎰ Deed Book, vol. 24, pp. 260, 261.
THOMAS LEMMON. ⎰

Know all men by these presents, that I, Robert Lemmon, of the township of East Deer, county of Allegheny, and State of Pennsylvania, in and for the consideration of the sum of one thousand dollars, to me in hand paid by Thomas Lemmon, of the township, county, and state aforesaid, at and before the sealing and delivery hereof, the receipt whereof I do hereby acknowledge, have granted, sold, assigned, and set over and convey unto the said Thomas Lemmon, his heirs, executors, administrators and assigns, all my estate, both real, personal and mixed, for the use of the said Thomas Lemmon, his heirs and assigns forever—to have and to hold, all and singular, the property granted, both real, personal and mixed, or mentioned, or intended so to be, unto the said Thomas Lemmon, his heirs and assigns forever—subject, nevertheless, to the right of redemption of the aforesaid property, both real, personal and mixed, by the said grantor, Robert Lemmon. In witness whereof, I have hereunto set *his* hand and seal this 26th day of September, A. D., 1861.

                                        ROBERT LEMMON.     [Seal.]
Witness, WM. V. EVANS.

Received the day of the date of the foregoing indenture of assignment of the within named Thomas Lemmon, the sum of one thousand dollars, the consideration money, above mentioned, in full.

                                        ROBERT LEMMON.
Witness, WM. V. EVANS.

This paper was duly acknowledged and recorded.

The plaintiff asked the court to charge:

1st. That the paper offered by the defendants, dated 26th September, 1861, is a mortgage, and not an absolute deed of conveyance.

Answer. We do not deem it necessary to determine whether or not the paper in evidence under the testimony constitutes a mortgage or a conditional deed. It gave to Robert Lemmon the right to redeem the property, on payment of the amount advanced by Thomas Lemmon, within a reasonable time. The

paper was executed 26th September, 1861. If, within a reasonable time, Robert Lemmon redeemed the property by paying the debt or purchase money, or other necessary expenditures, to the satisfaction of Thomas Lemmon, the land became the property of Robert Lemmon.

If this were done prior to October, 1869, it was within a reasonable time. If the transaction was a mortgage, Thomas Lemmon would have a right to make the repairs and the improvements necessary to the proper care and enjoyment of the same, and unless the jury are satisfied that the property had been redeemed by Robert Lemmon in his lifetime, there is not sufficient evidence to justify the jury that the net profits thereafter have been sufficient to repay the $1,000 mentioned as the consideration and improvements. (Third assignment of error.)

3d. We request the Court to charge, that the judgment and decree of the Court at No. 131 December Term, 1869, in evidence (the lunacy proceedings), estopped Thomas Lemmon, and those claiming under him, from setting up title under the paper of September 26th 1861.

Answer. The third point is refused. (Fourth assignment of error.)

5th. That, under all the evidence, the plaintiffs are entitled to recover the undivided five sevenths of the land described in the writ.

Answer. The fifth point is refused. It is for the jury to determine. (Fifth assignment of error.)

6th. That if the jury find, from the evidence, that the conveyance from Robert to Thomas was made without consideration, and to take effect upon Robert leaving the neighborhood, and with the right to redeem the land, and have it back in case he returned at a future time, and that in point, in fact, Robert never did leave the neighborhood, but remained until he died, about ten years thereafter, then the verdict should be for the plaintiffs.

Answer. This point is refused for want of evidence sufficiently definite to sustain it. (Sixth assignment of error.)

7th. That the fact that the paper of September 26, 1861, refers to all the estate of the grantor, real and personal, without further description, is evidence to show that the transaction between the two brothers was one contingent and conditional, and not an absolute conveyance of the land in dispute.

Answer. Refused. (Seventh assignment of error.)

The court charged the jury as follows:

The action that you are called on to try, is an ejectment brought to recover the undivided five sevenths of a tract of 117

acres of land, situate in East Deer township, in this county. The property in question, it is conceded, belonged to one Robert Lemmon, to whom it was conveyed by William Henderson, in November, 1841. Robert Lemmon died on the 2d day of June, 1871, unmarried, and, neither his father nor mother living, he left as his heirs seven brothers and sisters. One of them was Thomas, who has since died. The defendants are his children. The plaintiffs are the descendants of five of the other six heirs. If there was no more than this in the case your verdict should be for the plaintiffs for their claim. The defendants claim title to this property through their immediate ancestor, Thomas Lemmon, the brother of Robert Lemmon, deceased, prior owner. They offer in evidence a paper executed and acknowledged on the 26th day of September, 1861, and recorded on the 7th day of June, 1871, a week after the death of Robert Lemmon. In that paper Robert Lemmon makes in form, first, a conveyance of all his property, real, personal and mixed, wherever it may be (or an assignment of it, whatever you see fit to call it), to his brother, Thomas Lemmon, in consideration of $1,000, and reciting a condition, "Subject, nevertheless, to the right of redemption of the aforesaid property, both real, personal and mixed by the said grantor, Robert Lemmon."

We have had a learned and able discussion on the question as to what this paper is; it is rather a novel paper, a little different from anything we have had occasion to construe, and we are asked by counsel on both sides to determine whether or not it be a mortgage or a conditional deed. A mortgage is where the property is pledged for the payment of a debt, and it is in our state immaterial in what form it may be. It might be an absolute deed on its face, and not contain a word in relation to it being a mere pledge for money, and the grantor being entitled to the property on the payment of the money. Nevertheless it may be shown, by oral testimony, that instead of being a deed of absolute conveyance, it was simply a mortgage, a pledge as security for money, to belong to the grantor again when he repaid the loan. Now, I incline to think that this is but a mortgage, and if the money was repaid, or settlement had, the property reverted to the original grantor, Robert Lemmon. I do not deem it necessary, however, to decide that question, because if it were a mortgage, and Robert Lemmon paid it in his lifetime, or before he became a lunatic (and it is not pretended he paid it afterwards) the property reverted to him. If it were a conditional deed, under which he had a right to redeem the property, as said in this paper, and he did that in a reasonable time, no time being mentioned, he was entitled to the property in equity, and all

he wants is a proper declaration from the grantee, Thomas Lemmon, that it belonged to him. [Now, unless it were redeemed in the lifetime of Robert Lemmon, I do not think there is evidence sufficient for you to find that it has been redeemed by the yearly rents and profits over and above necessary repairs and improvements for the enjoyment of the property, so that I do not deem it a matter of very great importance in the view I take of this case, whether this is to be called a conditional deed or a mortgage.] If Robert Lemmon satisfied the condition, which would be the repayment of the amount advanced, with any necessary expenses, whether it be a mortgage or a conditional deed he is entitled to the property, and if that was not done, if the deed ever was delivered and went into effect, as it is presumed, he was not entitled to the property, or these parties under him. Now, both Robert Lemmon and Thomas Lemmon are dead. There is but little evidence on either side as to what the actual transactions were between them. It seems that prior to this conveyance Thomas Lemmon, the brother, having a family, lived on the farm, and he lived on it afterwards, and up to the time of Robert Lemmon's death, and his death. Robert Lemmon, it seems, did not live on the farm, perhaps he made his home there in part—washing was done, some witnesses say, but he lived in the neighborhood the most of the time, working for some farmer for wages. He was supervisor at one time, according to the evidence of Mr. Himmelwright. Some one spoke of the amount of wages he got on the farm—not very much, but he had no family. It seems, from the evidence, that his intellect became impaired, and the finding of the jury indicates that that occurred away back in 1864, three years after this assignment or mortgage, or whatever it may be. We have in evidence the proceedings in the Court of Common Pleas by which Robert Lemmon was declared a lunatic.

Thomas Lemmon, the brother, and the ancestor of the present defendants, through whom they claim, is the petitioner in that case. He filed a petition alleging that his brother Robert was a lunatic, stating his relations, and stating that he owned a farm of 110 acres, more or less, in East Deer township. The evidence indicates, and it is conceded, that the tract in dispute is the only land that Robert Lemmon ever owned there. On that petition, signed by Thomas Lemmon, and sworn to by him, the court appointed a commission and proceeded to summon a jury before him, and according to their proceedings they had before them Thomas Lemmon, among others, and on their testimony the jury found that Robert Lemmon owned the farm in East Deer township, of the annual value, clear of taxes, &c., of $100.

[Mellon *v.* Lemmon.]

Thomas Lemmon was duly appointed committee to take charge of the personal estate of his brother, Robert Lemmon, and he gave bond conditional for the faithful performance of his duty. [Now that petition, inquisition and report, and the bond, would be conclusive on Thomas Lemmon as to the income of that estate, and he is bound to account for it from that time as the committee of Robert Lemmon. He was not in any hostile position to Robert Lemmon after that, up to his death. It would be conclusive on him, I think, as to the income of that farm, but this proceeding is not conclusive on him as to the title to the land, because he may have made a mistake.] It seems to the court, however, to be very strongly presumptive evidence, that prior to that time Robert Lemmon had redeemed this farm and owned it, and Thomas Lemmon did not own it at that time, but it is for the jury to determine. If it had not been redeemed before that time I incline to think, and so charge the jury, that there is no evidence of a redemption thereafter that would, by the proceeds of the farm, over and above repairs and improvements, entitle the plaintiffs to recover. If the jury find from the evidence that the land was redeemed, they will find for the plaintiffs for the undivided five sevenths of the land in dispute. The defendants are entitled to one seventh of it in any event. Parties not represented may be entitled to another one seventh; the parties, plaintiff, can only get five sevenths of the land in dispute, and their proportional titles would have to be settled in another proceeding. If they do not find it was redeemed, they will find for the defendants generally. If they find it was redeemed, their verdict will be for the plaintiffs for the undivided five sevenths of the land described in the writ, with six cents damages and costs.

Verdict for the defendant, and judgment thereon; whereupon the plaintiffs took this writ, assigning for error: 1st. The general charge, and especially the part thereof enclosed in brackets. 2nd. That the court erred in not holding that the paper of September 26th, 1861, was a mortgage, and submitting to the jury whether the same, or any part thereof, had been paid and satisfied by the rents, issues and profits, and directing the jury to find and certify what sum, if any, was due, or owing upon the mortgage, to wit: In not directing a conditional verdict, fixing the amount that the plaintiffs would be required to pay to redeem the land. 3rd. In the answer to the plaintiffs' first point. 4th, 5th, 6th and 7th. In refusing the plaintiffs' third, fifth, sixth and seventh points.

*Barton & Sons* for plaintiffs in error.—The paper of September 26th, 1861, is a mortgage: Baisch *v.* Oakeley, 68 Pa.

St. R. 92; Thomson's Appeal, 70 Pa. St. R. 434; McClurkan
v. Thompson, 69 Pa. St. R. 305; Reitenbaugh v. Ludwick, 31
Pa. St. R. 131.

The court below held that this right of redemption must be
exercised within a reasonable time. The usual remedy for
the recovery of land by a mortgagor from a mortgagee in
possession, is by ejectment, and the right of action would not
be barred by the statute until twenty-one years after the
right of action accrued, and after the party in possession, by
some positive, hostile act, had set up an absolute title to the
land, and repudiated his holding under the mortgage.

"An equity of redemption cannot be destroyed, being
against the policy of the law:" Harper's Appeal; Rankin v.
Mortimere, 7 Watts, 372; see also 3 W. & S. 384; 3 Watts,
188.

The fact that the right of redemption is confined to the
grantor himself, and not given by the writing to the heirs and
assigns is immaterial, and will not prevent the heirs from re-
covery: Johnston v. Gray, 16 S. & R. 361.

The defendants were estopped from setting up title under
the paper of September 26th, 1861, by reason of the lunacy
proceedings: Rogers v. Johnson, 70 Pa. St. R. 224; Miller v.
Springer, 70 Pa. St. R. 269; 88 Pa. St. R. 203.

*A. C. Johnston* and *A. M. Watson*, for the defendants in
error.—We deny that that conveyance was a mortgage. We
took the position in the court below that the condition in that
deed, "subject, nevertheless, to the right of redemption of the
aforesaid property, both real, personal and mixed, by the said
grantor, Robert Lemmon," if it were not void for uncertainty,
had no other effect than to make the transaction a conditional
sale. In order to constitute a mortgage the relation of debtor
and creditor must exist and remain between the parties.
"Where there is no debt or obligation to pay there can be no
mortgage:" Haynie v. Robertson, 58 Ala. 37. "If land be
conveyed in consideration of a pre-existing debt due from the
grantor to the grantee, and it is the understanding of the
parties that the debt shall survive, the deed is a mortgage,
but the debt must survive. It is not enough that the evidence
of it remain in the grantee's hands if the liability be gone:"
Todd v. Campbell, 8 Casey, 250. "An absolute conveyance
and a separate agreement to reconvey, though executed simul-
taneously and as parts of one transaction, may or may not
constitute a mortgage, and equity is not concluded by the
form, but will have regard to the actual facts. The test is the
existence or non-existence of a debt. If, after the transaction,

no debt remains, there is no mortgage, but a conditional sale:"
McNamara *v.* Culver, 22 Kan. 661.

This rule has not only been recognized by this court, Todd
*v.* Campbell, *supra*, but in all the states where the question
has been raised. We cite Robinson *v.* Cropsey, 2 Ed. Ch.
(N. Y.) 138; Conway's Exrs. *v.* Alexander, 7 Cranch, 218;
Newton *v.* Newton, 11 R. I. 390; Hughes *v.* Sheaff, 19 Iowa,
335; Hoopes *v.* Bailey, 28 Miss. 328; Johnson *v.* Clark, 5 Ark.
321; Saxton *v.* Hitchcock, 47 Barb. 220; Kearney *v.* Macomb,
16 N. J. (Eq.) 189; Weathersly *v.* Weathersly, 40 Miss. 462;
Slutz *v.* Desenberg, 28 Ohio St. 371.

Mr. Justice STERRETT delivered the opinion of the court,
January 4th, 1886.

Leaving out of view the claim of defendants, based on the
deed of September 26, 1861, the plaintiffs, as next of kin and
heirs at law of Robert Lemmon, deceased, were entitled to re-
cover the undivided five-sevenths of the land embraced in
this action of ejectment. Title in Robert Lemmon prior to
date of the deed and heirship of plaintiffs to five-sevenths of
any real estate of which he died seised appear to have been
conceded by defendants; but their contention was that the
deed aforesaid is an absolute conveyance, and hence it vested
in Thomas Lemmon, under whom they claim an indefeasible
estate of inheritance. On the other hand, plaintiffs contend
that it is a defeasible conveyance or mortgage given to secure
payment of the $1,000 therein named; that Thomas Lemmon
was, therefore, merely a mortgagee in possession, and as such,
he and those claiming under him have long since received
from the net rents, issues and profits of the land, more than
sufficient to pay the sum for which it was pledged as security.
They accordingly requested the court to instruct the jury
that the deed was a mortgage, and not an absolute convey-
ance. That request should have been granted. The instru-
ment, on its face, is clearly a mortgage. The conveyance is
expressly subject to the right of redemption by the grantor,
Robert Lemmon.

This reservation, or defeasance clause, is what gives char-
acter to the instrument, and reduces it to a mere security or
mortgage; and there is nothing in the evidence *dehors* the in-
strument, to show that it is or was intended to be anything
else. This materially affects the relation and rights of the
parties, and hence the error into which the court fell in re-
fusing to charge as requested was not immaterial.

A mortgagee in possession, as was Thomas Lemmon the
grantee in the defeasible deed, must account for the rents,
issues and profits of the mortgaged premises, so that the net

[Mellon v. Lemmon.]

proceeds thereof may be applied to payment of the sum for which the property was pledged as security. If the same be fully paid the mortgagor is entitled to possession; if not, the mortgagee has the right to retain possession until out of the rents, issues and profits, or otherwise, the residue is paid. This equitable right of redemption in the mortgagor may be enforced in an action of ejectment, which, under our system of jurisprudence, is an equitable action, and may be employed as a substitute for bill to redeem. In such cases it is the duty of the jury, under the direction of the judge sitting as a chancellor, to ascertain how much the mortgagee in possession has realized from the rents, issues and profits. If they find he has received, or in the exercise of reasonable diligence should have realized enough to pay the sum secured, a general verdict for plaintiffs should be rendered; if not, a conditional or special verdict should be found, in such form that, upon payment of the residue, the mortgagor may, without unnecessary delay, obtain possession of the premises.

In the case at bar, the course of trial should have been similar to that above indicated; and, mainly for the reason that it was not so, the judgment must be reversed and a new venire ordered.

In September, 1869, eight years after the alleged conveyance, Thomas Lemmon, the grantee named therein, presented his petition to the court, setting forth that his brother Robert was a lunatic, seised of a farm, &c., and incapable of managing his estate. The inquest awarded on that petition found Robert was a lunatic, and had been for five years then past; that he was possessed of a tract of land worth $3,500, and of the yearly value of $100, clear of taxes, and that his next of kin were the petitioner and others. This inquisition having been approved and duly confirmed by the court, Thomas Lemmon was appointed committee, and as such gave approved security for the faithful discharge of his duties. It is very evident the land mentioned in the petition is the same that is described in the defeasible deed of September 26, 1861, and, in the absence of explanation, the averment in the petition as to ownership of the land, shows conclusively that it was not then claimed or owned by Thomas Lemmon, the petitioner. In connection with the fact that he makes no mention of any incumbrance, it is also strongly persuasive that he then had no claim on or interest in the land as mortgagee or otherwise; but it is not conclusive.

The first, second, and third specifications of error are sustained.

Judgment reversed, and a venire facias de novo awarded.