# Girard Trust Company, Trustee, v. Beckman Brothers Company

[redacted]

*Wintersteen, McCoy & Wintersteen,* for plaintiff.
*Sundheim, Folz & Sundheim,* for defendant.

LAMBERTON, J., June 7, 1933.—On November 25, 1927, Rose Carpel, being the owner of premises Nos. 43 and 45 South 17th Street, in the City of Philadelphia, mortgaged the same to plaintiff to secure a principal debt of $135,000. On the same date, Rose Carpel conveyed these two properties to Morris Beckman, Joseph C. Beckman and David N. Beckman, a copartnership trading as Beckman Brothers & Company. On June 25, 1929, said copartnership conveyed said premises to Beckman Brothers Company, a corporation, defendant herein. Defendant was the registered and real owner of said premises from June 25, 1929, until December 28, 1931, on which date defendant conveyed said premises to Christine Wilson, who thereafter held title as a naked trustee for defendant. All of said deeds contained the following provision: "Under and subject, nevertheless, to the payment of a certain first mortgage debt or principal sum of $135,000 with interest thereon."

On December 28, 1931, plaintiff's mortgage was in default, and plaintiff on said date entered into possession of the mortgaged premises and thereafter collected and retained all of the rents, issues, and profits thereof. Some time later, plaintiff instituted foreclosure proceedings and purchased the mortgaged premises for the sum of $75 at sheriff's sale on January 3, 1933. Taxes for the years 1931, 1932, and 1933 and water rent for the years 1932 and 1933 were then unpaid in the following amounts:

| | |
|---|---:|
| 1931 city tax | $3,153.83 |
| 1931 school tax | 1,641.59 |
| 1932 city tax | 2,688.80 |
| 1932 school tax | 1,399.57 |
| 1932 water rents | 107.82 |
| 1933 city tax | 1,982.68 |
| 1933 school tax | 1,032.08 |
| 1933 water rent | 18.00 |
| Total | $12,024.37 |

Plaintiff was, therefore, compelled to pay and did pay to the receiver of taxes the total of said sums, to wit, $12,024.37, to recover which sum, together with interest thereon, this suit is brought.

In the affidavit of defense defendant admits liability for city and school taxes for the year 1931 in the aggregate sum of $4,795.42, with interest from the date of payment, as averred in the statement of claim, but denies liability for taxes and water rents for the years 1932 and 1933, on the ground that defendant was not, subsequent to December 28, 1931, the registered owner of said premises, and that thereafter plaintiff, being in possession of said premises and in enjoyment of the income therefrom, was itself liable for said charges. The matter now comes before us on a rule for judgment for want of a sufficient affidavit of defense. The facts are not in·dispute. A pure question of law is involved.

The law has been definitely settled in Pennsylvania for many years that when a mortgagee is required to pay taxes, under circumstances such as here exist, the mortgagee steps into the shoes of the municipality and is subrogated to its rights: Bergdoll v. Pitts (No. 1), Pa. Superior Ct. 257; Pennsylvania Co., etc., Trustee, v. Bergson, 307 Pa. 44. The mortgagee, under such circumstances, can recover the amount so paid from any person who would have been liable to the municipality therefor: Bergdoll v. Pitts (No. 1), supra; Pennsylvania Co., etc., Trustee, v. Bergson, supra. This has been said to be on the principle that when one is compelled by law to pay the debt of another in consequence of that other's omission so to do, the law infers that such payment was made on request of the person really liable therefor: Hogg v. Longstreth, 97 Pa. 255; and a promise is implied to repay the person compelled to pay on his behalf.

The decisions are clear that where the registered title is in the name of one who holds as a naked trustee for another the city can collect from either the registered owner or the real owner, and therefore the mortgagee who is compelled to pay taxes may sue either the registered or the real owner: Fidelity Insurance, etc., Co. v. Second Phœnix B. & L. Ass'n, 17 Pa. Superior Ct. 270; Bergdoll v. Pitts (No. 1), supra; Emblem B. & L. Ass'n v. Clark 103 Pa. Superior Ct. 134; Pennsylvania Co., etc., Trustee, v. Bergson, supra. On this basis, plaintiff could have brought suit for the 1932 and 1933 taxes, either against Christine Wilson, who was the registered owner on January 1, 1932 and January 1, 1933, or against defendant, who was the real owner on each of said dates. The only point not definitely settled by the authorities is whether the entry of plaintiff into possession on December 28, 1931, and the subsequent collection of the rents by plaintiff changes this situation.

Defendant argues that plaintiff, being in enjoyment of the rents, was liable to the city for the taxes. Whether or not the city could have collected the taxes from plaintiff is, to say the least, doubtful, but to our mind immaterial. The question is not whether the city could have collected the taxes from plaintiff but who was fundamentally liable for those taxes. Even if the city was entitled to collect from the plaintiff, it could most assuredly likewise have collected from the registered owner or the real owner. The city may have a right to collect taxes from more than one person, and the fact that the city collects from one does not prevent that one from collecting against another fundamentally liable therefor: Pennsylvania Co., etc., Trustee, v. Bergson, supra.

Plaintiff went into the possession of the mortgaged premises in order to collect the rents and apply them to the mortgage debt. Once the claims of the plaintiff as mortgagee were satisfied, either from the rents or otherwise, it was legally bound to release the premises to the real owner: Mellon et al. v. Lemmon

et al., 111 Pa. 56; Gribbel v. Brown, 202 Pa. 10. It was bound to account to the real owner for the rents which it collected: Myers' Appeal, 42 Pa. 518; Mellon et al v. Lemmon et al., supra: Gribbel v. Brown, supra; Randal v. Jersey Mortgage Investment Co. et al., 306 Pa. 1. The plaintiff unquestionably had the right to pay the taxes in order to protect its possession of the mortgaged premises. If it had paid them voluntarily for such purpose, or because bound so to do, as counsel for defendant argues, plaintiff could have set off such payments against the amount of rents collected, applying only the net receipts on account of the mortgage debt: Myers' Appeal, supra; Hogg v. Longstreth, supra; Randal v. Jersey Mortgage Investment Co. et al., supra. If the plaintiff had done this, there would now be no claim against defendant on account of taxes, but the deficiency judgment against Rose Carpel, the mortgagor, would have been increased by exactly that amount. But while plaintiff could have offset taxes paid against rents collected, would it have been required so to do? We believe not. We believe that plaintiff could have rightfully applied the total of rents collected against its mortgage debt, and could have sued either the registered owner or defendant, the real owner, for the amount of taxes paid. The right of a mortgagee to collect for taxes paid is not limited to cases in which payment is made after a sheriff's sale. In Pennsylvania Co., etc., Trustee, v. Bergson, supra, it was said: "It was early decided that a mortgagee who paid taxes to protect his lien or interest in the property might recover the sum so paid from the person who was the owner of the property when the taxes fell due." See, also, Hogg v. Longstreth, supra.

But we do not have that case before us. The case before us is one in which plaintiff did not pay the taxes while it held possession as mortgagee, but applied the total of rents collected in reduction of the mortgage debt, paid the taxes upon purchasing the property at the sheriff's sale, and now sues the real owner therefor.

While the facts are quite different and the decision is therefore not conclusive of the question involved, the language of Judge Audenried, affirmed by the Superior Court in the case of Bergdoll v. Pitts (No. 1), supra, is at least interesting. Judge Audenried said: "The fact that he is out of possession and that another is enjoying the rents, issues and profits of the property is no reason why its real owner should escape the burden of paying the taxes on it."

If all persons in interest were financially responsible, the question here involved would be of no importance. Plaintiff has a deficiency judgment against Rose Carpel, the mortgagor. If plaintiff had paid the taxes and applied only the net instead of the total receipts against the mortgage debt, that deficiency judgment would be increased by exactly the amount of the taxes now claimed. Since each deed in the chain of title provided that the conveyance was under and subject to the payment of this mortgage debt with interest, defendant, insofar as its predecessors in title are concerned, has assumed responsibility for the payment of the mortgage debt and interest: May's Estate, 218 Pa. 64. Therefore, plaintiff could recover the amount of the deficiency judgment from Rose Carpel. Rose Carpel could recover the same from Morris Beckman, Joseph C. Beckman and David N. Beckman, trading as Beckman Brothers & Company, and Beckman Brothers & Company could in turn recover the same from defendant: May's Estate, supra. By this indirection, defendant would ultimately pay the amount of the taxes, though it would pay them as principal and interest of the mortgage it assumed, rather than as taxes. But probably some of the intervening parties are financially worthless, so that defendant would never be reached in that way and the loss would fall on plaintiff. But, in good morals, why should not defendant bear this loss?

Plaintiff only entered into possession because of the default of defendant, a default under a mortgage which defendant, insofar as its predecessors in title are concerned, had assumed. Defendant defaulted under the mortgage, defaulted in payment of taxes, and now contends that plaintiff should bear the loss thus occasioned. This is not good sense, and it cannot be good law.

It is plain that the law intends that a mortgagee, under the circumstances here present, may recover the taxes paid from the real owner. It is plain that the real owner cannot protect himself from liability by the conveyance of title to a straw person. No authority has been cited to indicate that this situation is changed by the fact that the mortgagee enters into possession and collects the rents. His sole liability under such circumstances is to account for the proceeds. No averment has been made that plaintiff did not properly account. We, therefore, hold that plaintiff may recover from defendant the amount of taxes paid.

In former times, the mortgagee under such circumstances could not collect for water rent: Theobald v. Sylvester, 27 Pa. Superior Ct. 362. This was so because the statutes imposed upon the owner of a property no personal liability for such water rent. The law has been changed since such decisions were rendered, and we now have decisions of our lower courts holding that water rents and taxes are in the same category: Frazier et al. v. Berg, 12 D. & C. 62; Henry v. B. Itzkovitz-H. Uram B. & L. Ass'n, 15 D. & C. 747. Counsel for defendant agree that there is no longer any distinction in this regard between taxes and water rent, and, therefore, we will not consider this point further.

And now, to wit, June 7, 1933, plaintiff's rule for judgment for want of sufficient affidavit of defense is made absolute.