Binns, Inc., Appellant, *v.* Winthrop et vir.

Argued September 24, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Horace M. Burton,* with him *Thomas A. Foulke,* for appellant.

*Harry Norman Ball,* with him *Smillie & Bean,* for appellees.

OPINION BY ROSS, J., November 19, 1945:

This is an action of scire facias sur mortgage to which an affidavit of defense averring payment was

filed. The case involves the usual building and loan association form of mortgage arrangement whereby in connection with the mortgage the borrower subscribes to a sufficient number of shares in the association to repay his loan when it matures. He pays at stated periods the dues on his shares, the interest on the money borrowed, and, when the premium bid for the loan has not been deducted, the installments on it. When by the receipt of dues, interest, premiums and fines for non-payment of dues, his shares become fully paid or matured, their value equals the amount of his debt, and the transaction is then ended by his surrender of the shares and the cancellation of his obligation by the Association.

On May 15, 1928, the defendants borrowed $15,000 from the Main Line Building & Loan Association and, as security therefor, executed and delivered to the Association a bond and mortgage upon property owned by the defendant, Rebecca Warner Winthrop, known as the Dreycott Apartments, in Haverford, Montgomery County. The mortgage provided for monthly payments of interest, dues and premium. As collateral security the mortgagors in the mortgage assigned to the Association "all their right, title and interest in (the) seventy-five Shares of the said Association . . . with the right to apply or appropriate at any time the value of said Shares toward the payment of said debt, and when so applied or appropriated, to cancel said Shares".

In November 1932, the mortgagors being in default, the Association, by resolution of its board of directors, directed its solicitor to enter judgment on the bond accompanying the mortgage and issue execution thereon attaching the rents from the property. Pursuant to his instructions and on information given to him by the secretary of the Association, the solicitor entered judgment on the mortgage bond for the full principal amount of the mortgage plus fines, dues, premium and interest in arrears and attorney's commission and, after giving

credit for the then withdrawal value of the shares of stock, $4593.00, issued execution on the balance averred to be due, to wit, $12,206.06.

Shortly after the issuance of the attachment execution, it was agreed between the Association and Robert C. Winthrop, one of the mortgagors, that thereafter Winthrop should collect all the rents from the lessees of the mortgaged property, deposit them in a special account and, after paying certain items of maintenance, remit the balance monthly to the Association. This agreement was carried out and during the following eight years Winthrop paid over to the Association $48,480.71, out of which the Association paid $34,231.10 interest on a first mortgage, taxes, insurance, etc., leaving an excess of receipts over expenditures in the amount of $14,-249.61. In January 1937 the Association went into voluntary liquidation and Alvin E. Shull, Robert Scott Noone and Ralph E. Springer were elected liquidating trustees, and on November 10, 1941, they assigned the mortgage to Arthur W. Binns, Inc., for $10,000. On January 14, 1942, the scire facias sur mortgage issued with a statement claiming a balance of $11,887.25. This was a new action on the mortgage itself and entirely separate from the action started in 1932 by entering judgment on the bond. An affidavit of defense was filed which alleged that no balance was due and that a proper application of the payments made by the borrowers would fully pay the mortgage debt.

At the trial of the case in the court below, the court ruled that all payments had been properly applied in accordance with the mortgage, and directed the jury to find for the Binns Company for the full amount of its claim. A motion for judgment n. o. v. was made and dismissed by the court below. A motion for a new trial was made and granted, the court stating that a jury must pass on the amount due, after it was first ascertained whether the shares were cancelled when judgment was entered in 1932. Counsel entered into a stipulation that the case

be retried without a jury; that the evidence introduced at the first trial be introduced in toto at the second trial, and that if a decision was reached that the shares had been cancelled in 1932, the balance due on the mortgage as of November 1941 was $1500.00.

The court below filed its finding that the shares had been cancelled in 1932, and that an application of the amounts thereafter received to interest and principal only would have reduced the balance due to the stipulated $1500.00, which with interest from November 1941, made his finding for the plaintiff as $1721.25. Exceptions filed by the plaintiff were dismissed by the court below.

It is admitted that Robert C. Winthrop paid over to the Association from 1933 to 1941 an excess of receipts over expenditures in the amount of $14,249.61. The appellants contend that this amount should be credited to payments on the shares of stock, which had greatly depreciated in value, rather than applied to the principal and interest on the mortgage as held by the court below.

The question before this Court is: When the Building and Loan Association entered judgment on the bond accompanying the mortgage and in the assessment of damages gave credit on the record for the then-cancellation value of the installment shares of the Association assigned as additional security for the loan, is such action conclusive on the Association as to its appropriation of the share value and cancellation of the shares as of that time?

The mortgage provides inter alia that upon default by the mortgagors "then and in such case the whole principal debt aforesaid should, at the option of the said mortgagee, its successors and assigns, immediately thereupon become due, payable and recoverable, and payment of said principal sum and all interest, and all fines thereon, and monthly premiums due, as well as any contribution on said 75 shares of stock then due, may be enforced and recovered . . ."

The assessment of damages on the entry of the judgment in this case follows exactly the formula for the assessment of damages when stock has been cancelled, as set forth by Sundheim on Building and Loan Associations supra, Sec. 179, which reads as follows: "The assessment of damages or, in other words, the amount for which judgment should be claimed or taken, depends upon whether or not the stock has been forfeited before the liquidation is made. If the stock has been forfeited, the principal or face of the loan should be charged, to which should be added, as a separate item, the dues, interest and fines then due, and whatever attorney's fee is provided for in the mortgage. When this is totaled, credit may be given for the withdrawal value of the shares, or only the amount actually paid in, without any profits or interest, at the option of the association." When the Association entered judgment in 1932 and with it filed an assessment of damages, it exercised its option under the mortgage and the net debt was fixed, and thereafter any payments made to the Association by the mortgagors must be credited to a reduction of that net debt together with accruing interest.

It is our opinion that by the entry of the judgment and the assessment of damages, including credit for the then-cancellation value of the mortgagors' shares of the Association, the 75 shares of stock originally assigned by the Winthrops to the Association were converted by the Association as of November 1932, being a conclusive forfeiture enforced by the Association under the remedies given it by the mortgage. Judgment on the scire facias is conclusive as to the appropriation or non-appropriation of the cancellation value of the shares. *Provident Trust Company v. Judicial B. & L. Assn.,* 112 Pa. Superior Ct. 352, 357, 171 A. 287.

After the conversion of the stock by the Association in November 1932 the relationship between the parties was that of mortgage debtor and creditor, and the Association was bound to apply the net rents in reduction

of the mortgage debt and interest, for where a mortgagee collects rent from the tenant by virtue of the right to do so given by the mortgage, he must account therefor to the mortgagor or those claiming title under him, and allow the net amount as credit on the mortgage debt. *Randal v. Jersey Mortgage Investment Company*, 306 Pa. 1, 158 A. 865. A mortgagee in possession occupies the status of a trustee and must use the net proceeds from the property in diminution of the sum for which the property was pledged in security. *Mellon v. Lemmon*, 111 Pa. 56, 65, 2 A. 56.

The judgment of the court below is affirmed at the cost of the appellant.