# King *versus* Mount Vernon Building Association.

106    165
27 SC   364
f 27 SC ¹365
106     165
28 SC   424
106     165
f218   ¹ 92

1. The owner of land at the time taxes are *assessed* against it is, by virtue of his ownership, personally liable to pay those taxes; and he alone remains personally liable therefor, although he convey the land to another during the year for which said taxes were assessed, and subject to the lien thereof. His grantee, in such case, is not personally liable for said taxes which were assessed during the ownership of the grantor, but the grantee is personally liable for subsequent taxes assessed during his· ownership, though, by a mistake of the assessor, assessed in the name of the original owner.

2. A mortgagee of certain premises purchased the same at a sale under the mortgage for an amount less than the mortgage debt, and was subsequently obliged to pay taxes which were in arrear for several years prior to the sale. B. had taken a conveyance of the premises in June of one of said years, the taxes for the year having been assessed in the previous year in the name of his grantor:
   *Held*, that B. was not responsible to the mortgagee for the amount of the taxes of that year.

3. Three days after the conveyance to B., he in turn conveyed the property to a son of his grantor, but the deed was not recorded, and did not leave the hands of the conveyancer. It was alleged that the conveyance was intended to be in fraud of the said original grantor's creditors. The taxes continued to be assessed on the property in the name of said original grantor:
   *Held*, that if B. was and continued to be the real owner (which was a question for the jury), he was liable to the mortgagee for the amount of unpaid taxes assessed for the years after he took title, prior to the sale under the mortgage, notwithstanding the mistake of the assessor as to the ownership of the property.
   *Held further*, that as this was not a contest between creditors, it was error to instruct the jury that they might consider whether there was an element of fraud in the attempt to cover up the property from the reach of creditors. This may have tended to mislead the jury.

March 28, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, and GREEN, JJ. STERRETT and CLARK, JJ., absent.

ERROR to the Court of Common Pleas No. 3, of *Philadelphia county*: Of January Term, 1884, No. 88.

Assumpsit, by the Mount Vernon Building Association against Miles King, to recover the amount of taxes for the years 1879, 1881 and 1882, paid by the plaintiff, which it was claimed the defendant was personally responsible for by virtue of his ownership of the property taxed, during those years. Pleas, non-assumpsit, payment with leave, etc.

On the trial, before LUDLOW, P. J., the following facts appeared: For several years prior to 1879, Joseph B. Hancock was the owner of premises No. 1728 Girard Avenue, in the city of Philadelphia, subject to a mortgage thereon, held by

the Mount Vernon Building Association. On June 14, 1879, said. Joseph B. Hancock by deed of that date, recorded two days later, conveyed said premises, inter alia, to Miles King, for the nominal consideration of $1,000. The real consideration was stated by Hancock to be indebtedness due by him to King. Shortly prior to said conveyance, the said mortgagee entered judgment against Hancock on the bond accompanying said mortgage. King testified that he knew nothing of the conveyance to him until after it was made, and finding the property was encumbered to an amount exceeding its value, he told Hancock he did not want it, whereupon Hancock caused a deed of re-conveyance to be prepared, from King to Joel C. Hancock, a son of Joseph B. Hancock, which King executed on June 17, 1879, three days after the conveyance to him. This deed was not recorded, and did not pass out of the possession of the conveyancer, by whom it was produced on the trial. There was no evidence of its delivery to the grantee.

The Mount Vernon Building Association, in 1882, purchased said premises at sheriff's sale under an execution upon their said judgment, for an amount insufficient to pay their mortgage debt, and received a sheriff's deed therefor dated June 10, 1882. At that time the taxes on said property for the years 1879, 1881, and 1882, were due and unpaid, amounting to $482.93, which taxes said association paid July 11, 1882, to recover which this suit was brought. The taxes for 1879 were assessed in 1878, in the name of Joseph B. Hancock, and the taxes for 1881 and 1882 were also assessed in the same name.

The Judge charged the jury, inter alia, as follows :—

" There is a principle of law settled in this State which virtually holds that when the owner of property owns it subject to certain fixed liens, he becomes responsible for them. If, at the time the defendant owned this property, there were taxes due and unpaid, which were liens, though assessed the year before, in my judgment, he is responsible for the taxes. I think that in any event he would be responsible for taxes due in June, 1879, for he held the property undoubtedly for three days, from the 14th of June, 1879, to the 17th of June, 1879." (First assignment of error).

" Another question is whether he is responsible for anything beyond this sum. That depends on who was the real owner after June, 1879. There is some evidence that a deed was executed to Joel C. Hancock three days after the deed to him of 14th June, 1879. In other words, after June 17, 1879, a deed was executed, and never recorded, which remained with Haines till this morning. In determining the question of

ownership, I say to you that if that deed was executed with an intent to cover up this property so that the creditors of Joseph B. Hancock could not reach it, and that the deed so executed was left unrecorded in possession of Haines, the title never changed. The jury in finding such a state of facts as that would have a right to find the whole object of that conveyance was in point of fact, fraudulent, and, if so, the title was never divested and remained in King. If so, he becomes responsible for the tax liens existing at the time of the sale by the sheriff, which were paid by the plaintiff." (Second assignment of error).

"If King was the real owner from June 14 to June 17, 1879, then, for whatever taxes were liens upon the property at that time, he is responsible, and your verdict should be for that amount at least. If he was not the owner after the 17th June, then he is not responsible for any taxes assessed after he parted with the title, but he is responsible for taxes which were liens at the time of his so parting with his title." (Third assignment of error).

Verdict for the plaintiff for $517.91, and judgment thereon. The defendant took this writ of error, assigning for error the portions of the charge above quoted.

*John G. Johnson*, for the plaintiff in error.—Personal liability for taxes is an incident of ownership of the land at the time the taxes are assessed. One who purchases the land subsequently, whether during the year for which the taxes were due or not, and is compelled to pay the taxes, may recover them back in a personal action against his grantor. The mere purchase of lands on which taxes have previously been assessed, and which remain unpaid, imposes no personal liability on the purchaser, to reimburse a subsequent purchaser from him who afterwards is obliged to pay such taxes in relief of the land. This doctrine is consistent with the decision in Hogg *v.* Longstreth, 1 Out., 255. Here the taxes for 1879 were assessed during Hancock's admitted ownership, and he therefore became personally liable to pay them. There are not several personal liabilities, one incident to the ownership at the time of the assessment, and others, indefinite in number, incident to any subsequent ownership while the taxes remain due and unpaid. Nor is there any apportionment of such liability: Shaw *v.* Quinn, 12 S. & R., 299. Upon what principle then does the plaintiff seek to hold King personally liable for the taxes of 1879, which were assessed and became due prior to his ownership? As to the taxes for subsequent years, he cannot be personally liable, as he re-conveyed the property in June 1879, three days after he took title. It is said the conveyance

and re-conveyance were made with intent to defraud Hancock's creditors. There is no evidence of that, or of King's knowledge of a participation in such alleged fraud, but, if that were otherwise, it would be wholly irrelevant to the question in this case. Equally irrelevant was the question as to the actual delivery of the deed from King to Joel C. Hancock; delivery is presumed and there was no evidence sufficient to rebut that presumption.

*George Junkin,* for the defendant in error.—The question of King's ownership from the time he took title until the plaintiff purchased at sheriff's sale in 1882, was distinctly submitted to the jury, in the charge of the court, (see third assignment of error) and the verdict established his ownership during that time. He is, therefore, clearly liable for the taxes of 1881 and 1882, and we contend that, under Hogg *v.* Longstreth, 1 Out., 255, he was also personally liable for the taxes of 1879. In that case there was a recovery, inter alia, for the taxes of 1874 which were assessed in 1873 against the previous owner, and TRUNKEY, J., said : "By force of law the taxes were a *personal* charge against the defendant, as well as a lien on the real estate." So also in Caldwell *v.* Moore, 1 Jones, 58.

Mr. Justice PAXSON delivered the opinion of the court, April 14, 1884.

The taxes for 1879 were assessed against Joseph B. Hancock, who was at that time the owner of the premises No. 1728 Girard Avenue. Hancock conveyed to Miles King on the fourteenth of June 1879, and on the seventeenth of the same month King executed a deed for the same premises in favor of Joel C. Hancock. The latter deed was not recorded and does not appear to have been delivered. It remained in the hands of Henry Haines the conveyancer, and was by him produced upon the trial below.

The court below held that King was personally responsible for the taxes of 1879, though he held the title but for three days. This we think was error. It is undoubtedly true that an owner of real estate against whom taxes have been assessed is personally responsible for such taxes. But it was held in Shaw *v.* Quinn, 12 S. & R., 299, that "Taxes on real estate cannot be apportioned among the different persons who may become owners of it during the year; the person charged at the beginning of the year, is liable for the taxes of the whole year, though he alien before the day of appeal."

It was urged, however, that Hogg *v.* Longstreth, 1 Out. 255, lays down a different rule. We do not so understand that case. No question was there raised that Longstreth was not

personally liable for a portion of the taxes because the same was assessed against a previous owner. On the contrary it distinctly appeared, as we learn from the report of the case that taxes had been assessed against the property in the name of John Longstreth, registered owner, for the years 1874 to 1878 inclusive. Not only so but claims had been filed by the city and judgments recovered against Longstreth for the taxes of 1874, 1875, and 1876; writs of alias levari facias were issued upon their judgments and were in the hands of the sheriff when Hogg paid the amount thereof in order to prevent a sale of the properties. Such were the facts upon which the opinion in Hogg v. Longstreth was predicated and it is needless to say that the question of Longstreth's personal liability was not an open question. Hence it must be understood that when our brother TRUNKEY says in his opinion that " By force of law the taxes were a personal charge against the defendant, as well as a lien on the real estate," he was speaking of taxes which had been assessed against Longstreth, who was at the time the owner of the property. Neither his opinion nor the judgment rendered in that case conflicts in any degree with Shaw v. Quinn.

This view sustains the first assignment of error. The second and third assignments relate to the taxes for the years 1881 and 1882. These taxes were likewise assessed against Hancock. If however King was the owner during those years he would be personally liable for the taxes, by virtue of such ownership. We do not think a mistake of the assessor would relieve him of such liability. The whole policy of our tax laws is to make the owner of land at the time taxes are assessed, liable for the payment thereof. No better illustration of this could be given than the Act of 1804 which made the tenant liable, with the right to defalk the taxes paid by him against the landlord's claim for rent. And Caldwell v. Moore, 1 Jones, 58, is authority for the principle that where taxes are assessed against the lessee of land, the lessor who is the owner is liable to his vendee for such taxes, in the absence of any contract between the lessor and lessee, by which the latter was bound to pay them.

In the case in hand the jury have found that King was the owner during the years 1881 and 1882. In submitting this question to the jury, however, the court instructed them that " if the deed was executed with an intent to cover up this property so that the creditors of Joseph B. Hancock could not reach it and that the deed so executed was left unrecorded in possession of Haines, the title never changed."

The element of fraud thus introduced was irrelevant and may have misled the jury. The conveyance from Joseph B.

Hancock to King and from the latter to Joel C. Hancock were good against all the world except the creditors intended to be defrauded, and as this is not a contest with such creditors, we must assume the deeds to be good *inter partes*. The recorded title being in King by the conveyance to him of the fourteenth of June, it will be for the jury to say whether he remained the owner after the seventeenth of June, when he executed the deed to Joel C. Hancock. I find nothing in the evidence to charge the latter as owner; nothing to show that the deed was ever delivered to him; that he took possession under it or that he even knew of it.

If King was the owner during these years we have no hesitation in saying, under the authority of Hogg *v.* Longstreth, *supra*, that he would be liable to the plaintiff below.

Judgment reversed and a venire facias de novo awarded.