Meyers, Appellant, *v.* Rental Income Corp.

Argued October 22, 1930.

Before Trexler, P. J., Keller, Linn, Gaw-throp, Cunningham and Baldrige, JJ.

*Albert Loeb Katz,* for appellant.

*Harry Shapiro,* for appellee.

Opinion by Baldrige, J., Febŕuary 27, 1931:
This is an appeal from the decree of the court below discharging rule for judgment for want of a sufficient affidavit of defense.

The plaintiff, on the 6th of June, 1929, entered judgement on a mortage bond and damages were assessed in the sum of $90,000.68. A fi. fa. was issued the same day and the real estate described in the mortgage was sold at sheriff's sale to the plaintiff on a bid of $70,000. This suit was instituted against the defendant, the record and registered owner of the premises covered by the mortgage, located at 4713 Chester Avenue, Philadelphia, to recover $2,764.95 which the plaintiff was required to pay after the sheriff's sale for city, school and poor taxes and water rent assessed against the premises for the year 1929. As the amount involved is over $2500, the attorneys of record filed a stipulation, under the Act of Assembly approved June 24, 1895, P. L. 212, Sec. 7 (4), agreeing to the hearing and deciding of the case by this court.

The defendant did not question the legality of the assessment or the payment of the taxes by the plaintiff, but denied its liability on the ground that it was not the real or actual owner of the premises and had no interest therein; that one, Morris A. Sarshik, had paid the entire purchase price for the premises; that the rents and income were collected by Sarshik and not the defendant; that it was orally agreed the defendant held legal title for the benefit of Sarshik who could call upon it at any time to make conveyance to whomever he might select. It will be noted there is no averment that the plaintiff had any knowledge of this secret trust or of a relation between Sarshik and the defendant of principal and agent.

It is conceded by the appellee that "under the decisions and under the Act of Assembly of June 4, 1901, P. L. 365, as well as under the original Act of April 12, 1859, P. L. 543, the primary duty to pay taxes assessed against real estate is on the real and actual owner: Caldwell v. Moore, 11 Pa. 58; King v. Mt. Vernon B. & L., 106 Pa. 165." Under the Act of 1901, the owner "means the person or persons in whose name

the property is registered, if registered according to law; and in all other cases means any person or persons, in open, peaceable and notorious possession of the property, as apparent owner or owners thereof, if any, and if not, then the reputed owner or owners thereof, in the neighborhood of such property." There is no ambiguity in the definition of "owner" in this statute and the meaning there given is applicable here. It was unnecessary for the plaintiff to make any further investigation before bringing this suit than examining the record. He had the right to rely on that high source of information, as he had no notice to the contrary.

In Neilson v. Equitable Trust Co., 18 Pa. Superior Ct. 635, it was held that "when a responsible trust company, for its own profit, holds itself out to the world as the absolute owner of land, by accepting and registering and recording a deed, all parties who deal with the title have the right to assume that the registered and recorded owner is legally liable for the taxes, unless they have notice to the contrary."

In the case of Rawle v. Renshaw, 15 Pa. Superior Ct. 488, mainly relied upon by the court below, this court held that it was inequitable to hold the record owner, who was but a naked trustee, liable for taxes assessed when the plaintiff had knowledge of the trusteeship. The late Judge PORTER in the course of that opinion said, "When he brought this action he knew he was attempting to compel this defendant to pay moneys for which the trust company alone was ultimately liable." The feature of knowledge distinguishes the Rawle case from the case at bar, and also from Com. Nat. Bank v. Shoemaker, 13 W. N. C. 255. In the latter case, the Supreme Court's per curiam opinion is as follows: "The bank held title to the land by a deed absolute on its face, and also caused it to be registered as an absolute title, in the Registry Bureau, under the 14th March, 1865 (Purd.

Dig. 1376-7). By this record of title it became liable for the taxes thereafter assessed thereon, and liable for damages sustained by the mortgagee by reason of their non-payment.''

Referring again to the affidavit of defense, we find it sets forth that Sarshik paid the entire consideration for the property at sheriff's sale, and, at his request, ''the defendant corporation permitted the legal title to the premises to be registered in its name, upon the oral agreement and understanding, that at the request of the said Morris A. Sarshik, it would convey, or cause to be conveyed, at the cost of Morris A. Sarshik, the said property to the said Morris A. Sarshik, or such person or persons as he might nominate;'' that the defendant had never received any income, profits or rents from the property as they have been at all times since the conveyance paid to Sarshik. It was not averred, however, that no consideration was paid to the defendant for holding the title or that it did not, or would not, derive any financial benefit for acting in the capacity of trustee or agent. What was the ''oral agreement and understanding?'' We are left entirely in the dark as to any of the terms and conditions thereof; a dry trust may or may not have been created thereby. As was said in the case of Neilson v. Equitable Trust Co., supra, ''The affidavit does not state what covenants the defendant entered into when it accepted and recorded a conveyance in fee of the land which rendered it 'a mere dry trustee;' nor does it state with whom the defendant entered into such covenants. If the defendant had entered into any contract or agreement which changed the character of the title under which it apparently held, it was incumbent upon it to set forth in its affidavit the specific terms of that agreement; and it was for the court to determine the character of the estate arising out of those covenants. The assertion of the affidavit that the defendant was a mere trustee was a conclusion of

law, and the facts upon which that conclusion was based not having been stated, the affidavit was insufficient." Hence, the averment of the existence of a dry trust was insufficient.

An assumption that the relationship of principal and agent existed would not be to the defendant's advantage as it would be responsible then for acting on behalf of an undisclosed principal: Aber v. Penna. Co., 269 Pa. 384.

Our conclusion is (a) that the defendant as record and registered owner is primarily liable for the payment of the taxes, and (b) that the affidavit of defense failed to set up a legal defense to the plaintiff's claim.

Order of the court below is reversed and judgment is entered for the plaintiff. The record is remitted to the court below, with directions to enter judgment against the defendant for such sum as to right and justice may belong, unless other legal or equitable cause be shown to the court below why such judgment should not be so entered.