## Pennsylvania Co. for Insurances on Lives and Granting Annuities, Trustee, *v.* Bergson, Appellant.

46

Argued January 7, 1392.   Before Frazer, C. J., Simpson, Kephart, Schaffer, Maxey and Drew, JJ.

*Walter B. Gibbons,* with him *Daniel C. Donahue,* for appellant.—The rule for judgment for want of a sufficient affidavit of defense should have been refused: King v. Building Assn., 106 Pa. 165; Rawle v. Renshaw, 15 Pa. Superior Ct. 488.

The case at bar is not ruled by the case of Meyers v. Rental Income Corporation, 101 Pa. Superior Ct. 438.

The title holder is only prima facie liable for taxes: Carbone v. Realty Co., 14 Pa. D. & C. 695; Bergdoll v. Pitts, 41 Pa. Superior Ct. 257.

*Thomas P. Mikell,* with him *Saul, Ewing, Remick & Saul,* for appellee.—The registered owner of real estate is liable for taxes: Hogg v. Longstreth, 97 Pa. 255; Building Assn. v. Webb, 12 Pa. Superior Ct. 545.

The only case in which registered owner has not been held liable is when there is knowledge of an unrecorded declaration of trust: Caldwell v. Moore, 11 Pa. 58; Neilson v. Trust Co., 18 Pa. Superior Ct. 635; Meyers v. Income Corporation, 101 Pa. Superior Ct. 438.

OPINION BY MR. JUSTICE KEPHART, February 3, 1932:

Appellee was compelled to pay the taxes on the mortgaged property when it foreclosed its mortgage, and sued to recover the amount so paid from the registered owner. The affidavit of defense admits that appellant was by recorded deed the registered owner when the taxes were assessed, but it avers he was not the real owner, holding only the naked title for the accommodation of another, the General Realty Company, his grantor, which was the true owner; that the conveyance to him was without consideration and was made to enable the real owner to make certain adjustments in its corporate affairs; and that within a month thereafter title was reconveyed to the corporation. Appellant never received any income or profit from the premises, all that being received by the General Realty Company, which paid all the mortgage interest and other charges. The court below held appellant for the tax.

May a mortgagee who has paid back taxes to protect a title acquired through a sheriff's sale recover the amount paid from the record owner, though in fact such owner had no real interest in the property, being temporarily a naked title holder for the accommodation of the real owner, receiving no consideration for his act? This exact point has not heretofore been determined in this State, although some closely related questions have apparently been settled by many of our cases. The rule as to the liability of a registered owner to a mortgagee who is compelled to pay taxes is the outgrowth of another rule, namely, that the owner of land is personally liable for the taxes assessed thereon while he is the owner; both rules are now questioned.

Personal liability for taxes is an incident to owner-ship of land. In Shaw v. Quinn, 12 S. & R. 299, it is stated without reference to any statute: "The persons charged in the duplicate are personally liable for the tax, and their bodies may be taken in execution if no goods and chattels are to be found." See Burd v. Ram-say, 9 S. & R. 109. The Act of 1845, P. L. 496, declares in section 4, that, in order to carry out the other pro-visions of the act, the taxing authorities "shall have the power to bring suit......against the person or persons returned and registered in the register of unpaid taxes on real estate......and shall......obtain judgment in favor of the county,......which judgment shall have the same effect, to all intents and purposes, as judgments in other cases." By the Act of February 3, 1824, 8 Smith Laws 189, taxes had previously been declared to be a lien on the property on which they were imposed; and the Act of 1845 can be considered in no other light than imposing a personal charge against the owner. Many of our cases speak of personal liability for taxes without referring to any statute.* It is clear from the prin-

---

* See Caldwell v. Moore, 11 Pa. 58, 1849 (lessor held liable where the tax had been assessed, in the name of the tenant under the Act of April 3, 1804, section 6); Densmore v. Haggerty, 59 Pa. 189; Hogg v. Longstreth, 97 Pa. 255; Commonwealth Nat. Bank v. Shoemaker, 13 W. N. C. 255; King v. Mt. Vernon Bldg. & Loan Assn., 106 Pa. 165, and Republic Bldg. & Loan Assn. v. Webb, 12 Pa. Superior Ct. 545. Such expressions are found in these opin-ions as "By force of law the taxes were a personal charge against defendant," (Hogg v. Longstreth) or "It is undoubtedly true that an owner of real estate against whom taxes have been assessed is personally re_ponsible for such taxes" (King v. Mt. Vernon Bldg. & Loan Assn.) or "That the assessed owner of seated land is per-sonally liable for taxes, notwithstanding the fact that under the statutes they are a lien or charge upon the land cannot be ques-tioned": Republic Bldg. & Loan Assn. v. Webb.

Other cases treat this problem in much the same way. In Com. v. Mahon, 12 Pa. Superior Ct. 616, 624, it is stated: "It has been held under the various systems which have prevailed at different times that the owner of seated lands is personally liable......

ciples in these cases and the legislative declarations that the owner of land is and should be personally liable for taxes assessed while he is the owner of the property. The more serious question now before us is, who may be regarded as the owner liable for the taxes?

The Act of March 14, 1865, P. L. 320, requires the recorder of deeds to certify all conveyances to the registry bureau for the sole purpose of registering ownership for assessment of taxes. Reading into this act the Act of 1845 which provides that suit may be brought against "the person returned and registered" as the owner, it is clear personal liability attaches to a registered owner as "owner" under the Act of 1865 and he is the one against whom suit is brought. Then, the Act of June 4, 1901, P. L. 364, defines "owner" as being "the person or persons in whose name the property is registered, if registered according to law." While the Act of 1901 is a lien act, it serves to show the person regarded as owner against whom the lien is to be filed; it illustrates legis-

Shaw v. Quinn, 12 S. & R. 299; Sheaffer v. M'Kabe, 2 Watts 421; Patterson v. Blackmore, 9 Watts 104; Densmore v. Haggerty, 59 Pa. 189; Biddle v. Noble, 68 Pa. 279." See also Rawle v. Renshaw, 15 Pa. Superior Ct. 488; Fidelity Insurance Trust & Safe Deposit Co. v. The Second Phœnix Bldg. & Loan Assn., 17 Pa. Superior Ct. 270; Bergdoll v. Pitts, 41 Pa. Superior Ct. 257, and Meyers v. The Rental Income Corporation, 101 Pa. Superior Ct. 438.

In Landreth v. McCaffrey (No. 1), 17 Pa. Superior Ct. 272, it is stated: "That the owner of real estate in the City of Philadelphia is personally liable for taxes assessed against the same, is apparent from the several acts relating thereto, that is, the Acts of April 16, 1845, P. L. 496, sections 4 and 5; March 11, 1846, P. L. 114, section 2, and April 12, 1859, P. L. 543, section 1." The Act of 1846, P. L. 114, section 2, provides: "That recovery may be had on claims for taxes......it shall be lawful......by action of debt to recover a general judgment.......and the judgment and execution shall be of like effect as in other cases," and, after providing for certain apportionments of taxes, the act goes on, "no such apportionment shall affect the personal liability of the owner at the time of the assessment."

lative intent as to whom the municipality should accept as owner for the purpose of collecting taxes.

Assessment for purposes of taxation should be made as the law directs. When a deed or other conveyance is duly recorded and registered in the name of a given person he, as the registered title holder, is regarded as the "owner" for purposes of assessment and taxation, and is personally liable for taxes levied on the property. This liability attaches because he holds himself out to the world through public records as owner by being registered and recorded as owner. That such a registered owner, though holding the title absolutely, is merely a dry trustee for the real owner, does not relieve him from that liability. The legislature did not intend that its governmental subdivisions should be put to the trouble and expense of looking behind the record to ascertain who is liable for taxes. When a deed, showing title in a given person, is duly registered under the Act of 1865 and subsequent acts in relation thereto, the taxing authorities need not search beyond this public record to determine if there is some other person against whom it shall levy tax. These authorities may, for the purpose of taxation, treat individuals in their several relations as they appear on the designated indices or the public records that are provided. Persons accepting such trusts must understand that they place themselves in a position where they become liable for taxes levied on the property while title is in their name.

But it is argued that such conclusion will cause a gross fraud to be practiced on the city, in that irresponsible parties may hold the title and the real owner escape personal liability. But this will not follow; through the Act of 1865, the municipality is not limited to such registered owner as the only person or source from which it may secure payment of the taxes levied or assessed on the property. The law will not permit the real owner to set up an irresponsible party, a straw man, as registered owner, and thereby escape

payment of taxes. The Act of 1865 is a comprehensive system intended to include for purposes of taxation all manner of ownerships affecting real estate. Section 8 of the act provides: "It shall be the duty of every assessor, whenever he shall find any property to be owned differently from the name in the proper assessment book, to report such change to the chief engineer and surveyor, without delay, and the chief engineer and surveyor, if finding such report correct, shall make the book of plans conform, by the proper entry, but without erasure of any name." The act provides a penalty for the assessor if he fails to comply with this section. The entire act requires property owners to see that their ownerships are duly assessed. Under section 8 of the Act of 1865, when the municipal authorities of Philadelphia learn, at any time after a tax has been assessed, that someone other than the registered owner is the real owner, the bureau of registry may through the assessor and chief engineer place the name of such person on the registry list along with that of the registered owner, *as registered owners of such property,* and such assessment will have the same force and effect as though such real owner had been originally named as the registered owner of the property at the time the taxes were assessed, and all the remedies of the municipality applicable to the collection of the taxes so levied may be enforced against the real owner as it may against the one first named as registered owner. The law in this respect has been recognized in similar manner in relation to tax sales. See Phila. v. Lukens, 22 Pa. Superior Ct. 298, 302, where it is stated: "The acts do not make invalid liens filed against property in the name of another than the registered owner...... When the real owner is made a party to the proceeding and service of the writ is made on him, his title becomes bound, without regard to who the registered owner may be." A municipality, therefore, has all the rights and remedies against the real or beneficial owner that it has against the registered owner, and may proceed under

these remedies against such real owner to collect any tax levied. It is the policy of the law to make the real owner pay the tax, but this does not mean that one who holds himself out as the owner will not also be responsible along with the real owner. In Fidelity Insurance Trust & Safe Deposit Co. v. The Second Phœnix Bldg. & Loan Assn., 17 Pa. Superior Ct. 270, it was held that the mortgagee who had been compelled to pay taxes for which the owner was liable, might recover from the real owner although, on the date at which the taxes had been assessed, a third party held title. This is an application of the rule just referred to and follows from the familiar principles applicable to an agent and his undisclosed principal. But the rule would apply even if the principal is disclosed. In cases where the registered owner pays the tax, he, of course, has a claim against the real owner for recoupment.

Under the Act of 1854, P. L. 21, section 11, there is one possible exception which may relieve a registered owner from liability. That act provides: "If any person against whom such taxes shall have been assessed, shall make affidavit he did not own [the land]......at the time they accrued and became a lien thereon, the said taxes shall be collected of the true owner thereof." This would apply where a grantor conveys and the grantee does not record his deed. There is no way to compel a grantee to record his deed; and since, under the Act of 1865, failure to record the deed causes both grantor and grantee to be liable for the tax assessed, though the grantor no longer holds title and is not in fact of law the owner; but for the Act of 1854, for purposes of taxation he would be regarded as the owner, and if he paid the tax, under the Act of 1865, he would be denied recoupment from the real owner. But, if such grantor, or those who would be liable for taxes through him, proceed under the Act of 1854 and file in the tax receiver's or the registry office an affidavit as required by the Act of 1854, in such form as the authorities may

require, the grantor and those liable for taxes through him may be relieved of the obligation. Authority is given by the broad powers in the Act of 1865 to the registry bureau to change the assessments. But such action must follow promptly the knowledge that the grantee is in default in recording his deed and that grantor will be liable for the taxes. This would seem to follow from the act itself and the import of King v. Mt. Vernon Bldg. & Loan Assn., 106 Pa. 165.

Another exception occurs where a person, without his knowledge or consent, has had a deed made and duly recorded conveying to him title to land as in King v. Mt. Vernon Bldg. & Loan Assn., supra. In that case a deed was made to the grantee without his knowledge or consent. Under these circumstances, the Act of 1854 provided a way for such person to disavow his ownership when he became aware of such conveyance. Until he did, the city could hold him as owner. Three days after the grantee knew of the fact that title had been conveyed to him, he executed a deed to his grantor's son, and left the deed in the hands of the scrivener. This court held the case was for the jury to determine whether the grantee had done what a prudent person would do to relieve himself of the title and liability which had been imposed upon him without his knowledge. While the law affixes liability to presumptive ownership as shown by registration of title, if that ownership is created through no act of the person in whom title is placed and without his knowledge and consent, then the law would not require him to pay taxes, if, after knowledge thereof, he takes prompt and adequate steps to disavow such ownership through a reconveyance. But if he fails to take advantage of the act when he learns of his liability, the prima facie liability becomes absolute as between such party and the municipality. Such grantee may, however, recover from the grantor the taxes paid and in this respect is in the same position and has the same rights as any third person

required to pay taxes. This does not mean that an actual record holder, who knowingly accepts title, can disavow ownership under the Act of 1854, or under the case of King v. Mt. Vernon Bldg. & Loan Assn., supra, and thus be relieved of liability. A title holder who accepts a deed absolute, though a mere trustee, cannot take advantage of the Act of 1854. By recording and registering his title, he becomes the owner of the property for purposes of taxation.

It was early decided that a mortgagee who paid taxes to protect his lien or interest in the property might recover the sum so paid from the person who was the owner of the property when the taxes fell due: Hogg v. Longstreth, 97 Pa. 255; Commonwealth Nat. Bank v. Shoemaker, 13 W. N. C. 255; King v. Mt. Vernon Bldg. & Loan Assn., supra; Republic Bldg. & Loan Assn. v. Webb, 12 Pa. Superior Ct. 545.

If, as in the case before us, a third party, as a mortgagee, is required to pay taxes, such party steps into the shoes of the municipality, and is subrogated to its rights, which, of course, includes the right to proceed against the record title holder. In Commonwealth Nat. Bank v. Shoemaker, supra, it is stated: "The bank held title to the land by a deed absolute on its face, and also caused it to be registered as an absolute title, in the registry bureau, under the 14th of March, 1865. By this record of title it became liable for the taxes thereafter assessed thereon, and liable for damages sustained by the mortgagee by reason of their nonpayment." Also in Neilson v. Equitable Trust Co., 18 Pa. Superior Ct. 635, 639, where a party "holds itself out to the world as the absolute owner of land, by accepting and registering and recording a deed, all parties who deal with the title have the right to assume that the registered and recorded owner is legally liable for the taxes, unless they have notice to the contrary." The same view is expressed in Meyers v. The Rental Income Corporation, 101 Pa. Superior Ct. 438.

The confusion in the law with respect to the registered owner's liability comes from a mistaken viewpoint of controlling equities. In Rawle v. Renshaw, 15 Pa. Superior Ct. 488, much relied on by appellant, it was held that the mortgagee could not recover for taxes which he had paid as against a person who held the naked legal title, when such person had executed and delivered an unrecorded deed of trust and the plaintiff mortgagee had full knowledge of this; that in such a case the mortgagee's remedy was against him whom the mortgagee knew to be the real owner. The decision was influenced by the equities between the mortgagee, the straw man who held the title, and the real owner. This case did not consider the higher equity of a municipality with respect to land assessed for taxation as discussed above nor rights of another who has been compelled to make good to the government for the apparent owner's default. Therefore, when such a third party must pay the taxes because of the apparent owner's default, upon doing so, he takes the place of the municipality for recoupment from the registered owner under the principle of subrogation regardless of his knowledge that another might be the beneficial owner. Any other theory would be opposed to the effective administration of our law of taxation.

Judgment affirmed.