*Decision will be entered under Rule 50.*

HARRY C. ABERLE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 92651.   Promulgated April 16, 1940.

*James F. McMullan, Esq.*, and *Andrew R. McCown, Esq.*, for the petitioner.

*Paul E. Waring, Esq.*, for the respondent.

## OPINION.

DISNEY: In this proceeding there is involved income tax for the calendar year 1935 in the amount of $693.77. A stipulation of facts was filed, including documents attached thereto, and the facts therein set forth are found by us by reference. Such facts so far as necessary to examination of the question presented may be summarized as follows:

The petitioner, who resides in Pennsylvania, filed his income tax return for the calendar year 1935 with the collector for the first district of Pennsylvania.

In 1922 Frederick C. Aberle acquired from Benjamin Barron certain real estate in Philadelphia, Pennsylvania, subject to mortgages, one of which was to the Philadelphia Savings Fund Society and the other of which was satisfied on February 26, 1934. Frederick C. Aberle did not assume the mortgages. On the date of acquisition of the property, Frederick C. Aberle executed and delivered to the petitioner a declaration of trust which recited that the petitioner had furnished one-fourth of the purchase price for the conveyance and that a one-fourth interest in the property was held for the petitioner. Of the purchase price petitioner had furnished $23,323.82. After acquisition of the property, petitioner at various times, made contributions upon the mortgages, in a total amount of $55,411.71, and he has had allocated to him $10,561.54 of the amount of depreciation sustained upon the property, leaving his net investment in the property $44,850.17.

Frederick C. Aberle died October 11, 1934, and under his will petitioner as his son received a one-fourth interest in the real estate above referred to, and thereafter was the owner of an undivided one-half interest therein. On October 30, 1934, petitioner and his coowners, through their counsel, advised the Philadelphia Savings Fund Society of their intent to divest themselves of the ownership of the property in the near future, and stated it was their understanding that the taxes for 1934 and prior thereto had been paid and asked to be advised at the early convenience of the Philadelphia Savings Fund Society

whether it desired to accept a deed from the owners at that time. On November 17, 1934, the mortgagee advised that it was not in a position at the moment to give an answer whether it would take a deed to the property, but that it would write petitioner's counsel a little later in that regard. On December 5, 1934, the mortgagee addressed petitioner's counsel, inquiring whether the owners of the property would agree to assume the costs incident to the transfer of title to the mortgagee and stating that upon reply the mortgagee would then be in a position to give a prompt answer. On December 6, 1934, petitioner through his counsel advised the mortgagee that the owners would agree to assume the costs incident to the transfer of title to the mortgagee, such costs to include recording of deed, title insurance in a nominal amount, not to exceed $2,000, cost of acknowledgements to the deed, and revenue stamps, all upon condition that the mortgagee accept a deed prior to January 1, 1935, or that in event that the deed should not be given by that date, that it would be given within 30 days thereafter, and that in any event the owners would be saved harmless for payment of 1935 real estate taxes assessed against the property, and that the mortgagee would, when such taxes became due and payable, and before delinquency, pay or cause the same to be paid. A prompt answer was requested as to whether the mortgagee would accept the title.

On December 14, 1934, petitioner's counsel wrote the mortgagee, referring to a telephone conversation of a day or two prior thereto and the mortgagee's statement that it would accept a deed to the property upon the conditions set forth in the recent exchange of correspondence, and stating that deed was being prepared and that title insurance had been ordered. A letter of confirmation of the agreement was requested. On December 15, 1934, the mortgagee wrote petitioner's counsel, confirming a verbal statement of the vice president of the mortgagee accepting the proposition made by petitioner's counsel in the letter of December 6, 1934. Immediately thereafter and in accordance with the agreement of the owners to pay the costs incident to the transfer of title, the petitioner and others applied to a title company for title insurance. The title company on December 29, 1934, furnished petitioner a settlement certificate showing various requirements of an insurable title.

On January 4, 1935, a deed from the petitioner and his coowners covering the property was mailed to the mortgagee, unexecuted, with a letter stating that the deed had been approved by the Real Estate-Land Title & Trust Co. and that if the deed met with approval and the mortgagee would return it, it would be executed and a time of settlement arranged.

On January 14, 1935, the mortgagee answered, stating that the conclusion had been reached that the deed might be accepted, ac-

companied by title insurance, and that the deed was being returned for execution and return, upon receipt of which settlement would be arranged. The deed was executed on January 21, 1935, by the owners of the property and was returned to the mortgagee by letter of January 22, 1935, advising that the owners were ready to complete the settlement at once and asking an early date therefor.

On January 31, 1935, a settlement was effected between the owners of the property and the mortgagee. The owners of the property paid expenses of $281.50 in connection with the transfer of title.

City and school taxes in Philadelphia, Pennsylvania, are assessed against the registered owner of realty as of January 1 of each year, at which time the record owner becomes personally liable for the taxes assessed. The city and school taxes so assessed against the properties covered by the mortgage as of January 1, 1935, were $4,865.16, and that amount was accrued by the Philadelphia Savings Fund Society on its books as of February 28, 1935, as representing city and school taxes assessed against the property as of January 1, 1935. The taxes so assessed were paid by the Philadelphia Savings Fund Society on or about February 28, 1935.

The petitioner in his income tax return for the year 1935 claimed and deducted a loss upon the transaction in connection with the property above referred to in the amount of $44,850.17. The Commissioner in determining the deficiency took the view that the loss sustained by the petitioner is a capital loss, limited to $2,000, in accordance with the provisions of section 117 (d) of the Revenue Act of 1934, and therefore allowed a capital loss of $2,000.

The only question presented to us here is whether the loss suffered by the petitioner is an ordinary loss deductible in full, or whether it is a capital loss limited by section 117 (d) of the Revenue Act of 1934. The parties seem to have no controversy as to whether the property was a capital asset. In short, the question narrows itself to whether the agreement to hold the petitioner harmless from taxes accruing as his personal liability on January 1, 1935, constitutes such consideration for the transfer of the property as to make it a "sale or exchange" within the text of section 117. Since the petitioner neither executed nor assumed the mortgage upon the property, no consideration for the transfer can be found in his being freed from such mortgage. *Commonwealth, Inc.*, 36 B. T. A. 850.

The petitioner argues in substance that the situation presents in effect an abandonment of the property and that the date of tax incidence, January 1, 1935, passed merely because of delay in the process of transfer and should not enter into consideration. He points out that in the first letter on October 25, 1934, to the mortgagee from petitioner's counsel, it was suggested that the intent of the owners of the

property was to divest themselves of ownership in the near future, thus automatically relieving the owners of personal liability for the payment of 1935 taxes, and that, for its own interest, the mortgagee agreed, prior to January 1, 1935, that the taxpayer would be relieved of the taxes if the transaction could not be closed prior to January 1, 1935.

Petitioner claims his loss in 1935. He cites *Greenleaf Textile Corporation*, 26 B. T. A. 737; affd., 65 Fed. (2d) 1017, to demonstrate that his loss was not suffered until there was "irrevocable divesting of title", and that:

\* \* \* Hence the only year in which the taxpayer in the instant case could claim a loss with respect to the encumbered real estate was the year 1935 in which the taxpayer conveyed the property to the mortgagee, thus irrevocably divesting himself of title thereto. The conveyance is the identifiable event fixing the time of the loss.

This position, though correct, is wholly inconsistent with his contention that he did not, on January 1, 1935, become personally liable for the taxes so that the agreement by the mortgagee to pay same would constitute consideration, making the transaction a sale under the statute. We are unable to see how he can consistently claim his loss in 1935 and yet claim that there was no consideration for the transfer. Assumption of taxes for which he became liable is obviously a valuable consideration. The taxes here became a personal liability of the petitioner on January 1, 1935, by virtue of the fact upon which petitioner relies to place his loss in 1935—his ownership on January 1, 1935. The fact that he had a contract, not yet consummated, that the mortgagee would pay the taxes, did not relieve him from liability. Assuming that he could have claimed a loss by abandonment in 1934, which is in effect his contention, he can not claim it in 1935. By that time valid consideration had arisen. The fact that he had a contract that the mortgagee pay the taxes only serves to accentuate the conclusion that such contract constituted consideration, and that there was a sale. The petitioner particularly provided in the agreement that he would transfer only upon condition either that the matter be closed by deed before January 1 (in which case there would be no consideration of value, he not being yet liable for taxes) or, if closed after January 1, that he be saved harmless from taxes. In other words, after January 1 he would convey only for a consideration—a valuable consideration. On December 29, 1934, the title insurance company furnished a certificate indicating a number of requirements to be met before the title could be insured, in accordance with petitioner's agreement by his letter of December 6 to furnish insurance "in a nominal amount, not to exceed $2,000." Whether these requirements were met before January 1, the record does not

show, but petitioner did not proffer a deed until January 4. The mortgagee on January 14, 1935, stated that "in view of your statement that the Estate is amply sufficient to pay all debts, legacies, and taxes, we have concluded that we may accept the Deed accompanied by Title Insurance." In other words, the mortgagee did not accept petitioner's title until January 14, because conditions had not been met and in fact still required the title insurance, which apparently had not yet been furnished. The deed was not executed until January 21, 1935, and settlement was not made between the parties until January 31, 1935. Had the mortgagee, because of dissatisfaction with the condition of the title, refused it instead of accepting it, subject to furnishing of insurance, on January 14, and had the petitioner then made the same deal with some other party, plainly there would have been consideration, in the assumption of taxes, for the conveyance. Thus it is demonstrated that an executory agreement which was pending prior to January 1, but at all times was subject to being defeated by failure to comply with the title requirements made by the mortgagee, can not be said to affect the situation. Indeed it appears in the letter of January 14 that the mortgagee actually then waived requirements as to clearing the title, on a statement that the estate was sufficient to pay debts, etc. This shows that consummation of any deal was even then optional with the mortgagee. In his income tax return the petitioner stated that "January 1935 property was turned over to the Phila. Saving Fund Society." The transaction, though initiated in 1934, did not have any tax consequences here involved until 1935. *Lucas* v. *North Texas Lumber Co.*, 281 U. S. 11, in which, as herein, a sale was agreed upon in one year, but the papers were not prepared until the next, and vendor's income was held to arise in the latter year.

In *Harry F. Doyle*, 39 B. T. A. 940; affd., 110 Fed. (2d) 157, we held that the petitioners had income in 1934 in the amount of moneys received in 1929 and 1930 on an executory contract to sell a house, because "It was not until 1934 that the petitioner learned as a result of the decision of the court that they could not obtain specific performance of the contract * * *." Similarly, herein the petitioner did not know until 1935 whether there would be performance of the mortgagee's agreement, conditioned on title, etc., to take the property. If, as in the *Doyle* case, he had been selling for a profit, moneys received on purchase price in 1934 would not have been income until 1935. By the same token he had no loss until 1935, after his personal tax liability had arisen.

Under the law of Pennsylvania, secs. 20713–20715, also sec. 20936, Compilation of 1920, the owner of real estate is subject to a per-

sonal liability for the payment of taxes. His goods and chattels are subject to distraint and sale for failure to pay delinquent taxes. He can not escape such liability even by transferring title to an irresponsible party. *Pennsylvania Co. for Insurances, etc.* v. *Bergson*, 307 Pa. 44; 159 Atl. 32. There was no evidence of insolvency of petitioner. We conclude and hold that there was valid and valuable consideration for the transaction consummated in 1935, and that it constituted "sale or exchange" of a capital asset under section 117 (d) of the Revenue Act of 1934. In *Pender* v. *Commissioner*, 110 Fed. (2d) 477, it was held under the same revenue act that the mortgagors' conveyance of the mortgaged property and other property in consideration of release of liability was a sale. The court said the sale "can not be deprived of its character as a sale merely because made to the holder of the notes secured by the mortgage." In *Commissioner* v. *Coward*, 110 Fed. (2d) 725, the court, in holding that a purchaser could deduct taxes paid, pointed out that there was at date of purchase no lien, no personal liability, and no agreement to pay taxes as part of the consideration.

The action of the respondent in applying the capital loss provision is therefore approved.

Reviewed by the Board.

*Decision will be entered under Rule 50.*