## Lohr Estate

*Frank A. Orban, Jr.,* for accountant.
*Simon K. Uhl,* for municipal authority.
*James B. Yelovich,* for purchaser.

COFFROTH, *P.J.,* June 30, 1977 — This case is here on objections filed to the first and final account and statement of proposed distribution of the executors of Luther S. Lohr, deceased, by the Upper Stonycreek joint municipal authority, alleging that the authority is a creditor of decedent for a sewer tapping fee and that no provision is made in the account for payment thereof, and by Deloris A. Kaltenbaugh, alleging that she acquired decedent's real estate (the property connected to the sewer) from the executors, that after the sale

agreement was made but before closing the transaction the tapping fee was a matter of dispute between the parties which was not resolved and that the estate is obligated to pay the same.

The executors answered the objections denying that decedent was indebted to the authority, alleging that the executors received no notice of claim, that any claim for tapping fee must be collected from the real estate as a municipal lien, and that no fee is owing because no completion certificate has been filed for the sewer project as required by law.

From the record we find the following

## FACTS

Luther S. Lohr was during his lifetimd and at the time of his death on September 15, 1976, the owner of a residential property on Barnes Street in Hooversville Borough, Somerset County. Before his death, the municipal authority began construction of a sewer project in Hooversville Borough and other municipalities. Apparently the Lohr property had been connected with an abutting municipal sewer system which pre-existed the new system of the authority, and the new system replaced or renewed the old lines near the Lohr property, but there was no new construction abutting the Lohr property and no new tapping or connection was required there; sewage service was continued through the old connection when the new construction was connected with the old some distance from the Lohr property in October or November, 1976.

An ordinance of Hooversville Borough adopted and approved August 4, 1975, requires that every property which "abuts upon any public sanitary or

combined sewer presently in existence or any public sanitary sewer to be constructed in the future" by the authority be connected to the system.

A resolution of the authority adopted September 26, 1975, establishes a schedule of rates, rents and charges for sewer service and an initial "service connection charge. . . for each building unit connected or to be connected to the sewer system." The initial service connection charge is fixed at $250 for each unit "presently connected to the existing collecting system," which increased to $300 if not paid within six months "from the start of construction." It is this initial fee or charge, herein described as the tapping fee, which is in issue in this case.

Assessment notices for the tapping fees payable for Hooversville Borough connections were dated January 1, 1977, and were mailed to property owners shortly thereafter within the next week. One such notice was addressed and mailed to "Luther Lohr, Hooversville, Pa.;" at that time Mr. Lohr was, to the knowledge of the authority, deceased and his property was unoccupied. The notice was not returned, and the executor who testified denied receipt.

On March 2, 1977, the Lohr property was conveyed to objectant Kaltenbaugh, pursuant to a sale agreement previously reached. The date of agreement was not proved, but apparently it was made sometime in January, 1977. The purchaser's husband testified that the only written agreement was the check for down money upon which some unspecified notations were made, although he stated that nothing was mentioned about the tapping fee. Neither the check nor the deed was offered in evidence. The tapping fee came into subsequent dis-

cussions between the parties prior to final settlement, in which the seller refused to pay the fee and notified the buyer that she would be liable for it. No express agreement on the point was reached, and the transaction was closed without payment of the fee by either party.

## DISCUSSION
### OBJECTIONS OF MUNICIPAL AUTHORITY

The Municipality Authorities Act of May 2, 1945, P.L. 382, 53 P.S. §301 et seq., as amended, specifically authorizes the authority, in section 4B(t) thereof,

"(t) To charge a tapping fee whenever the owner of any property connects such property with a sewer system or water main constructed by the Authority which fee shall be in addition to any charges assessed and collected against such property in the construction of such sewer or water main by the Authority or any rental charges assessed by the Authority . . ." 53 P.S. 306B(t).

Thus, there is adequate legal basis for the authority's imposition of the tapping fee here involved. But it must be noted that imposition of such a fee does not create a debtor-creditor relationship in the traditional sense, because liability does not rest upon any consensual or contractual understanding. See Moorehead's Estate, 289 Pa. 542, 553, 137 Atl. 802 (1927); Haddington Methodist Epis. Ch. v. Philadelphia, 108 Pa. 466, 471-2 (1885). Instead, liability is imposed by law even though the improvement or service is thrust upon the property owner. Nor are such impositions strictly taxes, although they have their legal basis in the taxing power. See University Park Cinemas

v. Windber Borough, 59 D.&C. 2d 726, 28 Sommerset 1, 5, 6 (1972) and cases there cited. As stated in 12 Standard Pa. Pract. §10: "The general rule is that without the aid of statutory authorization the amount of a municipal claim may not be recovered in a personal action, even on an implied promise to pay, because such a municipal claim or lien does not rest upon any agreement or assent of the owner but may arise even though the improvement made is against his wish."

At common law, a municipal claim could not be charged on land, nor against the owner personally. Liability for such a claim is created only by statute. Scott Township v. Davis, 77 Pa. Superior Ct. 352, 355 (1921). Municipalities can recover assessments for benefits resulting from local improvements only in accordance with the powers and procedures specified in statute: Scott Township v. Davis, supra, 356; McKeesport Borough v. Fidler, 147 Pa. 532, 23 Atl. 799 (1892).

In the present case, the authority has taken as its method for recovery of its claim the filing of objections to the account of the executors in which it is asserted that the authority is "a creditor of the decedent." The executors retort that the authority may recover only by filing a claim or lien against the land (in rem) under the Municipal Claims Act of May 16, 1923, P.L. 207, as amended, 53 P.S. §7101 et seq., and cannot utilize the procedure of filing objections to the account. We agree that the authority cannot succeed here, although we do not fully adopt the estate's reasoning. To resolve the problems here raised, we must look to the applicable statutes.

The Municipal Claims Act, 53 P.S. §7101, expressly includes within its definition of "municipal

claim" a claim arising out of "laying . . . sewers, branch sewers, or sewer connections therein;" and the term "municipality" as there defined includes an incorporated municipal authority; see Southwest Delaware County Municipal Authority v. Aston Township, 413 Pa. 526, 535-6, 198 A.2d 867 (1964). And the act provides two specific procedures for securing or recovering payment of such a claim: (1) a municipal lien against the property benefited, and (2) an action in assumpsit against the owner of the property.

(1) The Municipal Lien:

The act creates a statutory lien for the claim by providing that all municipal claims ". . . lawfully imposed or assessed upon any property in this Commonwealth . . . shall be and they are hereby declared to be a lien on said property . . .: and said liens shall have priority to and be fully paid and satisfied out of the proceeds of any judicial sale of said property . . ." 71 P.S. §7106(a).

In order to continue the lien a formal claim must be filed in the office of the prothonotary within the specified time; where the claim is for an improvement or benefit, other than for taxes and recurring rates, it must be filed "within six months from the time the work was done in front of the particular property, where the charge against the property is assessed or made at the time the work is authorized; within six months after the completion of the improvement where the assessment is made by the municipality upon all the properties after the completion of the improvement; and within six months after confirmation by the court, where confirmation is required; the certificate of the surveyor, engineer, or other officer supervising the

improvement, filed in the proper office, being conclusive of the time of completion thereof . . ." 53 P.S. §7143.

A timely filed claim remains a lien until fully paid, provided it is continued by revival proceedings within each following five year period: 53 P.S. §7183. If the claim is not timely filed or timely continued, "its lien on real estate shall be wholly lost." 53 P.S. §7183; Avalon Borough v. Shafer, 100 Pa. Superior Ct. 52 (1930). The filing or revival of the claim does not create the lien; it merely preserves the pre-existing statutory lien. See Lower Merion Township v. Manning, 95 Pa. Superior Ct. 322 (1929); Philadelphia v. Cooper, 27 Pa. Superior Ct. 552, 555 (1905). Before execution may be levied upon the liened claim, it must be reduced to judgment by scire facias proceedings as outlined in the act. See 58 P.S. §7183.

The lien is purely in rem, and carries no personal liability: Provident Trust v. Judicial B. & L. Assn., 112 Pa. Superior Ct. 352, 171 Atl. 287 (1934); Avalon Borough v. Shafer, supra, 57. Likewise, the judgment obtained in scire facias proceedings is purely in rem ("de terris") and carries no personal liability: 53 P.S. §7274.

Assuming (without deciding) that the municipal authority has such a lien in this case on decedent's real estate, such lien cannot support the authority's claim as "creditor" in proceedings in the orphans' court division of the court against a decedent's estate. On exceptions to an account, a claim against a decedent or his estate must rest on personal liability; the orphans' court division is not a forum for the foreclosure of liens. Accordingly, unless some other statutory provision gives to the municipal claim the status of a debt of decedent,

the estate has no obligation to pay it, and the authority's remedy is to foreclose the lien against the land.[1]

(2) The Action In Assumpsit:

The second means of collecting a municipal claim by assumpsit action is contained in the Act of April 17, 1929, P.L. 527, as amended, 53 P.S. §7251, supplementing the Municipal Claims Act, as follows:

"In addition to the remedies provided by law for the filing of liens for the collection of municipal claims . . . [municipalities] may proceed for the recovery and collection of all of the foregoing claims by action in assumpsit against the person or persons who were the owner or owners of the property at the time of the completion of the improvement, or at the time the water or sewer rates . . . first became payable notwithstanding the fact that there was a failure on the part of any such . . . [municipality] to enter any such municipal claim as a lien against the property . . . Any such action in assumpsit shall be commenced either within six

---

1. See Hoverter's Estate, 50 Berks 171 (1958), holding that since taxes on unseated land carry no personal liability, and are a lien on the land only, there is no liability on the part of the estate to pay such taxes and exceptions to the account were dismissed. Ordinarily, except for unseated land taxes, real estate taxes carry personal liability: Pennsylvania Co. for Ins. v. Bergson, 307 Pa. 44, 159 Atl. 32 (1932). As to the rights of a creditor who holds the personal obligation of decedent, secured by a lien on collateral, see: United Security Tr. Co. Case, 321 Pa. 276, 184 Atl. 106 (1936); Emlen's Estate, 333 Pa. 238, 4 A.2d 143 (1939); Skolnek's Estate, 342 Pa. 49, 19 A.2d 462 (1942); Moreland Estate, 349 Pa. 374, 37 A.2d 532 (1944); Lehman Estate, 10 D. & C. 2d 76 (1956), and Perkasie Vulcanizing Co. v. Mundorf, 62 D. & C. 2d 769 (1973).

years after the completion of the improvement from which said claim arises or within six years after the water or sewer rates . . . first became payable."[2]

Although presentation of a claim against a decedent's estate at audit or on exceptions to an account is not strictly an action in assumpsit, we think the two procedures are legal equivalents within the meaning of the foregoing statute. By authorizing collection in assumpsit the legislature intended not merely to affect the remedy for foreclosing a lien but to impose a substantive personal liability for payment of the claim. See Youngwood Borough v. Gay, 71 Pa. Superior Ct. 154, 156 (1919), and Barnesboro Borough v. Speice, 40 Pa. Superior Ct. 609 (1909); compare Perkasie Vulcanizing Co. v. Mundorf, 62 D.&C. 2d 769 (1973). As the court said in Pennsylvania Co. for Ins. v. Bergson, 307 Pa. 44, 49 (1932), when presented with a similar problem, the act authorizing suit ". . . can be considered in no other light than imposing a personal charge against the owner." These conclusions are consistent with section 41 of the act, 53 P.S. §7112, which permits also the pursuit of other remedies allowed by law, and is broad enough to allow resort to the remedies available to creditors of a decedent's estate under the provisions of the Probate, Estates and Fiduciaries Code of June 30, 1972, P.L. 508, as amended, 20 P.S. §3381 et seq. Therefore, a municipal claim may be

---

2. A tapping fee for connecting to a sewer improvement, although not an assessment for the cost of construction of the improvement, is a claim arising therefrom, and is not classified as a "sewer rate" which contemplates a recurring service charge. See Philadelphia v. Holley, 208 Pa. Superior Ct. 47, 220 A.2d 396 (1966).

presented upon exceptions to an account provided that the decedent is the owner of the property within the terms of the 1929 act supra. Compare 12 Standard Pa. Pract. §16.

Examination of the 1929 act shows that it imposes personal liability for a claim (other than recurring rates) only upon *"the person or persons who were the owner or owners of the property at the time of the completion of the improvement."* The parties disagree as to time of completion. The evidence presented by the municipal authority treats completion as having occurred in October or November, 1976, when the new sewer was physically connected to the old sewer serving the Lohr property, to which it was previously connected, whereas, counsel for the estate contends that the time of completion is conclusively determined by the certificate of completion and, since none has been filed completion has not been established. But we need not resolve this problem because, under either view, the authority cannot recover against the estate.[3] Under either view, the decisive fact is that completion necessarily occurs *after* the

---

3. This contention of the estate is possibly flawed on either of two grounds. (1) The provisions making the completion certificate conclusive as to time of completion are contained only in section 9 of the Municipal Claims Act for the purpose of determining (a) the six month period for filing the claim for lien purposes, and (b) liability as between buyer and seller; there is no comparable provision in the 1929 supplement which imposes personal liability on the owner at the time of completion. (2) The provisions making the certificate conclusive might not necessarily mandate certification, nor preclude other proof of completion, where no certificate is filed. See Punxsutawney Borough v. Nordstrom, 61 Pa. Superior Ct. 253 (1915), and Shefts v. Security Title, 55 D. & C. 2d 616 (1972).

death of Luther S. Lohr on September 15, 1976. Under section 301(b) of the Probate Code, title to decedent's real estate passed at death to his devisees, subject only to the administrative powers of the executors.[4] We consider that, after death, decedent was no longer the *owner* of the property within the meaning of the 1929 statute establishing personal liability for municipal claims. Although we find no precedent for this ruling, it is the general rule that a decedent's estate is liable only for the debts of decedent created in his lifetime, and not for obligations arising after death except such as are made payable by statute or are contracted by the fiduciary. Although the fiduciary retains certain broad legal powers over decedent's real estate, including the power of sale, 20 P.S. §3351, until a sale occurs the legal and beneficial title are in the heir or devisee: Compare Brown v. Bailey, 84 D. & C. 269 (1952), and Byrne v. Kanig, 231 Pa. Superior Ct. 531, 331 A.2d 472 (1974). An analogous situation exists with respect to an estate's liability for taxes on decedent's realty. Personal liability for such taxes is an incident of the ownership of land: Pennsylvania Co. for Ins. v. Bergson, supra. During lifetime, while decedent is the owner, he is personally liable for such taxes, and after death his estate is personally liable only for such taxes as were assessed during his lifetime; the heirs and devisees are liable for taxes assessed after death because they are then the owner and decedent is no longer the owner. See

---

4. Section 301(b), 20 P.S. §301(b), provides: "Legal title to all real estate of a decedent shall pass at his death to his heirs or devisees, subject, however, to all the powers granted to the personal representative by this code and lawfully by the will and to all orders of the court."

McGrath Estate, 159 Pa. Superior Ct. 78, 80, 46 A.2d 735 (1946); Straub Estate, 74 D. & C. 77, 80 (1950); 16 P.L.E. 40, §144; 2 Hunter, Pa. O.C. §7(d), 47. (2d ed. 1959). The same principle is applicable here.

Since decedent was not the owner of the property benefited "at the time of the completion of the improvement" as provided in the 1929 act, the estate has no liability for the claim and the objections of the municipal authority must be dismissed. This action is without prejudice to other proceedings against the proper party or parties, or against the land, although we intimate no opinion upon the propriety of such other proceedings.

THE KALTENBAUGH CLAIM:

This claim is asserted in the objections filed by the purchaser of decedent's property which was benefited by the improvement. The objections request an order compelling the estate to pay the claim in suit, because the estate is "indebted" to the authority for the claim. The objections further allege that in the sale of the property there was no provision made for payment of the tapping fee. No other factual averments are made to support the claim for relief. We have already rejected the proposition that the estate is indebted to the authority, which undermines the buyer's objections as pleaded.

The only conceivable basis for a claim by the buyer against the estate is upon a contract made with the buyer by the executors as seller for payment of the claim by the estate.[5] The burden of

5. Probate Code section 3331, 20 P.S. §3331, provides: "Unless he expressly contracts otherwise, in writing, a personal representative shall not be personally liable on any writ-

proving such a contractual undertaking rests upon the buyer as claimant filing the objections. See Horner Estate, 25 Fiduc. Rep. 328, 29 Somerset 343 (1974). Apart from the fact that no such contract has been pleaded by the buyer, no such contract has been proved. In fact, the buyer alleges that the "subject of the tapping fee was a matter of dispute between the parties which was not resolved by agreement of the parties or otherwise."

Each of the parties, seller and buyer, contends that the issue is resolved in his favor by the following clause in section 9 of the act, 53 P.S. §7143: "In case the real estate benefited by the improvement is sold before the municipal claim is filed, the date of completion in said certificate [of the surveyor, engineer, or other officer supervising the improvement, filed in the proper office] shall determine the liability for the payment of the claim as between buyer and seller, unless otherwise agreed upon or as above set forth." (Bracketed words added.)

The estate argues that since the buyer admits that the parties did not otherwise agree, and since no completion certificate was filed, the statute places liability on the buyer as a matter of law. The buyer asserts that since the project was functionally complete before the sale agreement was made, the statute puts the liability on the seller as a matter of law, there being no agreement to the contrary.

---

ten contract which is within his authority as personal representative and discloses that he is contracting as personal representative of a named estate. Any action on such a contract shall be brought against the personal representative in his fiduciary capacity only, or against his successor in such capacity, and execution upon any judgment obtained therein shall be had only against property of the estate."

Although this statutory provision purports to "determine the liability for the payment of the claim as between buyer and seller, unless otherwise agreed upon," it really does not make such a determination. It is inartfully drawn, and its effect falls short of that suggested by the language. This provision merely establishes a means of proving a completion date for use in determining liability between buyer and seller in the absence of contrary agreement, namely, the completion certificate. The statute does not say that certification is essential to proof of completion date. See Punxsutawney v. Nordstrom, 61 Pa. Superior Ct. 253 (1915). Nor does it decree what relevance the completion date has in the controversy between buyer and seller; for that we must resort to case law which holds that the statutory lien usually attaches to the property benefited when the improvement is completed. See Nether Providence Twp. Assessment Case, 143 Pa. Superior Ct. 286 (1941); Lower Merion Township v. Manning, supra, 325; Allegheny City v. King, 18 Pa. Superior Ct. 182 (1901); Shefts v. Security Title, supra; Savarese v. Davis, 36 D. & C. 2d 63 (1964); Moore v. Beattie, 5 D. & C. 2d 739, 743 (1955); Trosino's Estate, 42 Del. Co. 1, 17 Somerset 110 (1954), cited with approval in Leh v. Burke, 231 Pa. Superior Ct. 98, 114, 331 A.2d 755 (1974); Hecht, Pennsylvania Municipal Claims and Tax Liens (Bisel 1967) §56.22.[6] Whether the claim is a lien upon the property at the time of sale is often the determining factor in a controversy be-

6. The tapping fee is chargeable "whenever the owner . . . connects . . . with a sewer system or water main constructed by the Authority" as provided in section 4B(t) of the Municipality Authorities Act, supra, page 91.

tween seller and buyer, and the purpose of the statute is merely to aid in determining when that occurs. See Leh v. Burke, supra; Moore v. Beattie, supra.

Thus, if the sale precedes completion of the improvement, the lien attaches when the property belongs to the buyer, payment is his obligation and the seller has no responsibility. See Byrne v. Kanig and Leh v. Burke, both supra. If, however, completion precedes the sale, the property is encumbered in the hands of the seller, but it does not follow necessarily that the seller is then liable to the buyer and the statute does not so decree. Such an encumbrance merely makes the liability of the seller a possibility; it does not become a reality unless and until it is further shown that the seller contractually undertook to sell free of the encumbrance, or otherwise to pay the claim, and the buyer as claimant in a proceeding of this kind has the burden of proving such an undertaking. We do not construe the statute as intending to relieve the buyer of that burden, or to shift to the seller as defendant party the burden of proving absence of such an undertaking.[7]

Here the buyer has failed to make the essential proof, even assuming completion before the sale, and the buyer's objections must be dismissed. It is not necessary, therefore, to decide date of completion, or whether the buyer's action in closing the sale and accepting the deed, despite the seller's

--------

7. Of course, even where the sale precedes completion, the parties may by agreement shift responsibility for payment to the seller, and in a collection proceeding by buyer against seller the buyer will likewise have the burden of proving the undertaking.

notice concerning the claim, constituted an implied agreement by the buyer to pay it as the estate contends. Moreover, even assuming a covenant by the seller against encumbrances and a breach thereof: see 10 P.L.E. 300, §33; recovery is permissible only for such encumbrances as claimant has been compelled to discharge: 10 P.L.E. 321, §59, which has not occurred here.

### ORDER

Now, June 30, 1977, the objections of the Upper Stonycreek joint municipal authority and of Deloris A. Kaltenbaugh are dismissed. The first and final account and the statement of proposed distribution of the executors are confirmed absolutely sec. reg. The parties shall pay their own costs. costs.