## Consolidated Real Estate Co. v. Northumberland County et al.

*Richard Henry Klein,* for plaintiff.

*Frederick E. Lark, Carl Rice* and *Charles M. Menapace,* for defendants.

TROUTMAN, J., January 10, 1949.—This is an action to quiet title wherein plaintiff seeks to have a decree entered that it holds 1.2 acres of surface of the Isaac Miller Tract in the Township of Mount Carmel, Northumberland County, Pa., free of certain claims of defendants for unpaid taxes.

On April 9, 1943, plaintiff purchased 1.2 acres of the surface of the Isaac Miller Tract consisting of 311 acres from the Middle Coal Company and the deed thereof was recorded on April 15, 1943. At the time

of this conveyance there were certain returned unpaid taxes entered against the Isaac Miller Tract of 311 acres for the year 1941. Between April 9, 1943, and August 16, 1944, two of the defendants obtained additional claims for unpaid taxes against the entire tract for the year 1943.

In 1944, plaintiff requested an apportionment of all unpaid taxes against the Isaac Miller Tract, and pursuant to this request, the Commissioners of Northumberland County apportioned the taxes and furnished to plaintiff a statement of the amount due and owing from the 1.2 acres of surface for taxes for the years 1940 to 1943 inclusive. This sum was paid to the county treasurer and proper receipts therefor were given. From 1944 to the present time, the 1.2 acres of surface have been separately assessed against plaintiff and plaintiff has paid all taxes thereon for the years 1944 to 1947 inclusive.

On January 25, 1945, the Treasurer of Northumberland County sold the 311 acres of the Isaac Miller Tract at a tax sale to the county commissioners and gave a deed therefor, at which sale the 1.2 acres of surface owned by plaintiff were included. Over two years have elapsed since the treasurer's sale and there has been no redemption.

From the allegations contained in the complaint, plaintiff's contention is that by the payment of the apportioned taxes in 1944 the 1.2 acres of surface owned by plaintiff were freed and discharged of all claims of any of defendants for returned unpaid taxes for the years 1941 and 1943. Plaintiff further contends that the treasurer's sale in January 1945 was void and of no effect so far as the 1.2 acres of surface are concerned. The complaint asks the court to enter a proper decree that plaintiff holds the land in question, free and clear of the said tax claims.

Defendants jointly filed preliminary objections to the complaint, which are now before the court for disposition.

The fourth and fifth objections filed by defendants relate to the effect of payment of taxes or a portion thereof upon tax liens entered in the prothonotary's office by the Mount Carmel Township School District and Mount Carmel Township. The complaint refers only to unpaid taxes which had been returned to the office of the county treasurer and consequently any tax liens which might have been entered in the prothonotary's office by the school district and the township are not affected. The complaint does not request the court to take any action to enter any decree concerning the effectiveness of tax liens in the prothonotary's office. The county treasurer is not authorized to accept payment on account of taxes which have been entered as tax liens under the Municipal Lien Act of May 16, 1923, P. L. 207, as amended, 53 PS §2021 et seq. We are of the opinion that the complaint refers only to taxes returned under the Act of May 29, 1931, P. L. 280, 72 PS §5971c. Consequently, the fourth and fifth objections must be dismissed.

The remaining three preliminary objections are to the effect that the apportionment of unpaid taxes in 1944 was beyond the authority of the county commissioners and that no payment of taxes less than the whole amount due upon the entire tract would discharge such taxes, and that, accordingly, the treasurer's sale of the 311 acres in 1945 was valid. In substance, these three objections may be summarized as one, and involve the question whether the county commissioners did or did not have authority to apportion returned unpaid taxes assessed and levied in years prior to 1944 between plaintiff as owner of 1.2 acres of surface and the owner of the remainder of the 311 acres in the Isaac Miller Tract.

The only statutory authority for apportioning taxes to which plaintiff has referred is contained in the Act of July 17, 1935, P. L. 1091, sec. 2, 72 PS §5880, which provides:

"In all cases where, heretofore or hereafter, real estate shall have been or shall be sold to a county at tax sale under one assessment, and the said real estate shall have been divided into parcels and the title of record to such parcels shall have become vested in different owners, the county commissioners, so long as title remains in the county, may permit the owner to redeem the parcel to which he, or they, shall hold title or have an interest of record, by having the said parcel assessed in the manner provided by law and by the payment of the proportion of all taxes with interest and costs due thereon, but less any penalties, as the assessment, so placed upon the parcel, shall bear to the assessment upon which the sale was had."

The foregoing statute clearly empowers the county commissioners, so long as title remains in the county, to permit the owner to redeem the parcel to which he shall hold title or have an interest of record, by having the parcel assessed in the manner provided by law and by the payment of the proportion of all taxes with interest and costs due thereon, but less any penalties, as the assessment, so placed upon the parcel, shall bear to the assessment upon which the sale was had. This act specifically refers to real estate which may have been or shall be sold to a county at tax sale under one assessment and the said real estate shall have been divided into parcels and the title of record to such parcels shall have become vested in different owners. Plaintiff contends that the authority given to the county commissioners under this statute to permit a redemption of a parcel of the whole land sold at a tax sale to the county, is likewise applicable to an apportionment of taxes before sale. The complaint alleges

that the agreement to apportion the taxes was made in 1944 on taxes due for the years 1941 and 1943, which was prior to the treasurer's sale held in January 1945.

The Act of July 17, 1935, P. L. 1091, supra, empowers the county commissioners to permit the redemption of a portion of a larger tract of land sold to the county at a tax sale. It is purely a statute extending the power of redemption and does not give any power to the county commissioners to apportion taxes on lands, the title to which is not in the county. The taxes for the years 1941 and 1943 were apportioned on lands which were then held by the Middle Coal Company and plaintiff, the county treasurer having taken no steps to collect these taxes by sale. Consequently, there is no authority expressed by statute giving the county commissioners the power to apportion taxes on land to which it has no title.

The next question arises as to whether county commissioners have any implied authority to apportion returned unpaid taxes on a tract of land, title to which was in the name of the Middle Coal Company and plaintiff.

The Act of May 29, 1933, supra, sec. 1 (72 PS §5971(a)), provides that it shall be the duty of each receiver or collector of county, township, school district or institution district taxes to make a return to the county commissioners of such taxes which are assessed and levied on seated lands, and which are unpaid, and for which no liens have been filed. Section 2 provides that the county commissioners shall enter such returned taxes upon a tax return docket. Section 3 provides that after docketing such taxes, the county commissioners shall certify the returns to the county treasurer who is authorized and empowered to receive and collect the same and shall pay over and distribute the same, less costs and charges to which he may be entitled, to the

proper parties entitled to receive the same, for the uses and purposes for which such taxes were assessed or levied. After return of taxes, the county treasurer has complete and exclusive authority as agent, of all taxing authorities, to collect the said taxes in accordance with the Act of 1931, supra. Gillow v. Wallis, 35 Luz. 97. This act does not give any authority to the county commissioners to compromise or apportion the taxes as returned by the various tax collectors. It has never been held that the county commissioners are trustees for the various taxing districts of unpaid taxes which have been returned to them and certified by them to the county treasurer. The county commissioners do not become a trustee for the benefit of the several taxing authorities to whom taxes are due until the commissioners have purchased the land at a county treasurer's sale for unpaid taxes. Upon the purchase of the land the trusteeship continues so long as title to the land remains in the county: Zerbe Township School District et al. v. Northumberland County Commissioners, 57 D. & C. 120.

The county commissioners had no right or authority to interfere in any way with the taxes which were returned to them and certified by them to the county treasurer as unpaid taxes for the years 1941 and 1943, which taxes were based upon a levy and assessment made upon 311 acres of the Isaac Miller Tract, the title of which at that time was in the name of the Middle Coal Company. The complaint does not disclose upon what assessment the tax apportionment was based nor is there any allegation as to the authority of the board of commissioners to make such an apportionment. At the time the apportionment was made and the county treasurer received the proportion of taxes assigned to the plaintiff's property, he was acting as a receiver of taxes for all defendants and had no

authority to accept less than all the taxes which had been returned in full settlement of the claims.

In City v. McGonigle, 4 Phila. 351 (1861), the court held that taxes assessed become liens upon the entire property upon which they are so assessed; each and every part of such property is liable for the payment of the entire lien. No part can be discharged, therefore, but by the payment of the incumbrance. The tax upon real estate is assessed by officers appointed under the law, and there is no provision of law which allows any other person or officer to alter or change the amount of such tax or to release the property from the lien. The receiver of taxes has no such authority. It is his duty to collect the tax as assessed—not to apportion it, as he may deem expedient, and to collect a part only.

The Supreme Court, in several cases, has held that the owner of land at the time taxes are assessed against it is personally responsible for said taxes, and the taxes assessed for a certain year cannot be apportioned among the different persons who may become owners of the real estate during the year; in other words, the person charged at the beginning of the year is liable for the taxes of the whole year even though he has conveyed title to the premises during the year: Shaw v. Quinn, 12 S. & R. 299; King v. Mount Vernon Building Association, 106 Pa. 165; Densmore v. Haggerty, 59 Pa. 189. While the above cases deal with personal responsibility for taxes, nevertheless, they appear to be authority for the proposition that taxes assessed in a particular year against the whole tract cannot be apportioned.

There is no allegation in the complaint that the apportionment of the taxes in question was made with the consent of the school district and Mount Carmel Township, or that there was any ratification of the agreement to apportion on their part. Plaintiff contends that the acceptance of the apportioned taxes by

the respective districts and their subsequent acquiescence in the assessment, levy and collection of taxes against the 1.2 acres of surface separately from the remainder of the full tract of 311 acres, since the apportionment made in 1944, estops them from denying that what has been done in this matter was proper. In relation to the receipt of the apportioned amount of the unpaid taxes for 1941 and 1943, the complaint specifically alleges that the agreement to apportionment was made by Northumberland County and as we have previously pointed out, the county commissioners had no authority to apportion taxes which were levied and assessed by the School District and the Township of Mount Carmel under any circumstances. There is no allegation that such an agreement was made by the school district and the township. The fact that the county treasurer may have remitted moneys received by him on account of the apportioned taxes to the school district and the township cannot be held to be a ratification of the agreement to apportion. There is no averment in the complaint that these districts knew that the funds which they received were on account of any apportionment of taxes and it is highly possible that such payments may have been considered to be part payment on account of the taxes on the entire tract.

Plaintiff contends that, even in the absence of statutory authority, it is within the implied powers of the county commissioners to apportion taxes which remain unpaid for prior years. While it is true that the commissioners have many implied powers to carry on the business of the county, nevertheless, in respect to the assessment, levy and collection of taxes, these matters are of purely statutory origin and are wholly governed by the various acts of assembly which have been enacted in this regard. See Commonwealth v. Liggett Drug Co., Inc., 56 Dauph. 123. The legislature has seen fit to enact various statutes giving the

county commissioners authority to do certain things in respect to taxes. The Act of 1935, supra, was enacted to give the county commissioners power to permit the redemption of a portion of a tract of land which had been purchased by them at a tax sale where it was shown that the person redeeming the same had title of record to a particular portion. The enactment of this statute clearly indicates that the commissioners had no power to apportion delinquent taxes where a portion of a larger tract had been sold or conveyed and this act gave them that right where they became purchasers of the property at a tax sale. Certainly, the county commissioners would have no right to apportion taxes on lands over which they have no control. The complaint does not allege the method by which the apportionment was determined and there is no averment that an assessment was made of the various interests. The law provides that the assessment of real estate for tax purposes shall be made by the duly elected assessors and while the county commissioners in the performance of their duties in relation to the revision of tax assessments may consider the equities of assessments and revise the same, yet they cannot make any assessment of real estate for tax purposes in the first instance.

Plaintiff, defendants and the court have been unable to find a single case similar to the one at bar which has ruled either that the county commissioners have authority to apportion or that they do not have authority to apportion. We are of the opinion that where taxes have been assessed and levied, the various municipal authorities have no power or authority to compromise or apportion such taxes for, if such were the case, it would lead to lack of equality as well as lack of uniformity in the assessment and levy of taxes upon the various owners of real estate within the jurisdiction of the municipalities. In the case of a com-

promise of taxes, the procedure has been very precisely set forth by statute and in such case the compromise must be approved by the court.

We are of the opinion that the county commissioners had no power to apportion the assessment upon which the taxes for 1941 and 1943 were levied between the 1.2 acres purchased by plaintiff and the remainder of the Isaac Miller Tract. According to the complaint, a separate assessment was made for the years subsequent to 1943 but the complaint is silent as to the manner in which the apportionment was determined in 1944.

At the argument, plaintiff contended that defendants are now estopped from denying their authority to make the agreement of apportionment. While a municipality like a private corporation is subject to the doctrine of estoppel, yet it cannot be bound for an act of its agent in excess of its corporate powers, or in violation of positive law, or for an act requiring legislative or executive action: Breinig v. Allegheny County, 332 Pa. 474, 486. We are of the opinion that the County of Northumberland possessed no corporate power to make an apportionment of taxes which were delinquent at the time plaintiff acquired title and the doctrine of estoppel is not applicable in this case.

We conclude that inasmuch as there was no authority or power in the county commissioners to apportion the delinquent taxes for 1941 and 1943, the sale held in January 1945, on account of these delinquent taxes, was valid and passed title to the county. However, we are impressed with the fact that since 1944 not only the county, but the various municipalities have been receiving taxes from plaintiff in this case and for the first time, in this action, brought by plaintiff, questioned the authority of defendant, Northumberland County, to apportion the delinquent taxes and since it appears that title to this land remains in the County

of Northumberland, the county should exercise the power given to it under the Act of 1935, supra, and permit the redemption by plaintiff of the portion of land owned by them, credit being given for the taxes which had already been paid under the alleged agreement of apportionment. If this were done, not only would plaintiff obtain a clear title to the 1.2 acres purchased by it, as far as taxes are concerned, but justice and equity would be done thereby. However, in accordance with the law, as the court interprets the same, the first, second and third preliminary objections filed by defendants must be sustained.

### Order

And now, to wit, January 10, 1949, the first, second and third preliminary objections filed by defendants to plaintiff's complaint are hereby sustained and it is hereby ordered, adjudged and decreed that the complaint be dismissed and that judgment be entered in favor of defendants and against plaintiff. Costs to be paid by plaintiff. Let an exception be noted and bill sealed for plaintiff.